## Israel Hunt *vs.* Clarissa Hunt.

A title by disseizin is a good and sufficient title for the demandant in a writ of right, if the tenant cannot show a better title.

Darrein seizin is a good plea and defence to a writ of right.

Where a father was insane, and one of his sons, who had left his house, returned and took charge of his farm, with the acquiescence of the mother and the rest of the family, for several years, and until the father's death ; it was held, that the father continued seized while he lived, and that the taking of the profits of the farm by the son must be considered as for the use and benefit of the father.

Where a son, who had taken charge of his father's farm for several years next preceding the father's death, without disseizing him, continued in possession thereof thirty years afterwards, and then devised the same to his wife and died ; it was held that the other heirs of the father were entitled to maintain a writ of right against the devisee to recover their portions of the estate ; and that there was no legal presumption, from these facts, that the other heirs had made any grant of their right to the devisor.

Writ of Right, dated December 30th, 1839, to recover an undivided fourth part of about seventy acres of land in Tewxsbury.   The demandant counted on the seizin of John Hunt, his father, within forty years.   Plea, the general issue. with a prayer for an inquiry as to the seizin of John Hunt Trial before the chief justice, who reported the case as follows

It was proved or admitted, that the demandant is the son of John and Lydia Hunt, both of whom died on the demanded premises. The said John Hunt died August 10th, 1807, aged 87 years, and the said Lydia died in 1814, aged 82 years. The said John and Lydia left lawful issue, four children, viz. 1. *Paul*, who was born in 1754, who lived in Andover, and died about 1832 : 2. *Israel*, the demandant, born in 1758, who for the last 40 years has lived at Nashua in the State of New Hampshire : 3. *Ebenezer*, born in 1761, and who, for more than 50 years before his death, lived on the demanded premises, and died in 1839, without issue : 4. *Lydia*, born in 1769, and who more than 40 years ago married one Sawtell, and lived in Townsend, and who died in 1838 or 1839.

The said John and Lydia Hunt, the parents, both died intestate, and no administration was taken upon the estate of either of them.

The demandant offered no evidence of any record title in John Hunt, the father, but to prove a title and seizin in him, called as witnesses :

1. Jonathan Hunt, aged 81 years, who testified, that he was the son of Nathaniel Hunt, who was the brother of John Hunt , that he lived in the immediate vicinity, on the next farm, at his father, Nathaniel Hunt's, and knew the said Paul, Israel, and Ebenezer, when they were boys ; that as early as he could remember, his uncle John lived on the farm, with his wife and the boys, and that he lived there until he died ; that sometimes he was insane and sometimes regular ; that at the times when he was well, he carried on the farm, and saw to the business himself, and managed well. His children were most of the time at home, and when under age they worked on the farm. When he was not regular, his wife took care of the farm. His son Ebenezer went to Ackworth when he was young, bought a farm there, and stayed two or three years, and then returned. The father remained on his own farm, and Israel (the demandant) took care of it whilst Ebenezer was gone. Paul Hunt was there several years, but the witness did not know that he saw him here after Ebenezer came back from Ackworth. Ebenezer mar-

ried soon after he returned, viz. in 1796. Lydia Hunt, the daugh-
ter, married Sawtell about the year 1798. Israel (the demandant)
was married about 1794, and lived in Dracut, and then in Nash-
ua.   After Ebenezer returned, he had the principal management
of the farm.   The father occasionally did some work, but was
often insane and incapable of doing business.   Ebenezer remain-
ed on the farm after his father died, until his own death.   The
witness believed that Israel (the demandant) remained on the
farm sometime after Ebenezer came back, and that they lived
there together.

2. Betsey Bailey, aged 72 years, deposed, that she was the
daughter of the said Nathaniel Hunt, and lived in the house next
to the demanded premises ; that John Hunt lived on the farm
until his death ; that " they carried on the farm amongst them ;
that is, when John Hunt was unable to work, his wife and chil
dren carried it on ;" that after Ebenezer Hunt came there, they
used to eat together as one family ; that from her earliest recol-
lection, her uncle John Hunt was most of the time insane ; that
Ebenezer Hunt was twice married, and when he was in prepar-
ation for his first marriage, he built an additional room at one
end of the house.   Ebenezer Hunt, when he died, had a large
property — three or four farms — besides this farm.

This witness also deposed, that John Hunt and Lydia Hunt
lived on the farm until their respective deaths, and that she had
no reason to doubt that Ebenezer did all he could to make them
both as comfortable as they could be.   She furthermore depos-
ed, that Israel (the demandant) frequently visited Ebenezer
while he lived on the farm.

3. Jonathan Butman, 70 years old, testified to the same facts
substantially, as stated by the preceding witnesses ; and also, that
he believed he had seen Israel Hunt at work on the farm after
Ebenezer returned from Ackworth.

The tenant, to establish her title, gave in evidence the will of
Ebenezer Hunt, dated August 1839, duly proved and allowed,
whereby he devised the whole of his real estate to the tenant,
who is his widow ; and she then proved, that from the death of

John, in 1807, said Ebenezer had been in the sole and exclusive occupation of the premises. And there was no evidence that any of the other children ever made any claim to a share of the demanded premises, until since the death of Ebenezer Hunt in 1839.

The tenant then called sundry witnesses.

1 William Rogers, aged 62 years, testified that he lived within one and a half miles of the farm, and had for 50 years been acquainted with Ebenezer Hunt and the farm ; that Ebenezer occupied the farm as other people did their farms—worked and sold the produce : His father and mother were there till their deaths. The farm was taxed, when the witness knew any thing about it, to Ebenezer Hunt : He never knew it taxed to any one else. Several years whilst Ebenezer was on the place, John Hunt, his father, was roving abroad. Ebenezer took care of his father and mother. Israel and Paul did not take care of them after Ebenezer lived on the farm.

In 1796, Ebenezer made an addition to the house. The value of the estate was then small compared with its present value ; not worth more than $ 1000. He afterwards built a barn. When the house was repaired, Ebenezer had the apparent general charge of the farm.

2. Samuel Hardy, aged 60 years, testified that he assisted in building the barn, and was employed and paid by Ebenezer. It was built in 1805 or 1806, while John Hunt was alive Ebenezer had the management of the farm, and the witness never knew any one else to claim it.

3. Oliver Clark, 61 years old, testified that he had always lived within half a mile of the farm in question, and that Ebenezer Hunt had been the principal occupant of it for 45 years.

4. James Kelley, 75 years old, testified that he had known Ebenezer Hunt, and the farm in dispute, ever since he could recollect ; that he was employed by Ebenezer, and paid by him for working on the house when an addition was made to it, and also for other work done previously and afterwards. The witness remembered the time when Ebenezer came from Ackworth, and believed it to be between 50 and 60 years ago. He occu-

Hunt v. Hunt.

pied the farm after that time, and carried it on until he died. When he came back from Ackworth, his father was delirious. He used to be two or three years crazy, running about; and then two or three years still, saying nothing. He was not able, the last part of his life, to take care of himself. Before Eben-ezer returned, his father used to be put into confinement; but not afterwards.

5. Philip Rogers, 80 years old, testified that he had known the Hunts nearly 70 years; he knew when Ebenezer came back, and that he was at Ackworth two or three years, and when he returned, he took possession of the farm and occupied it until he died. John Rogers, 85 years old, Edward Wood, 71 years old, Eldad Worcester, 78 years old, and Dudley Marston, 59 years old, also testified to the same facts, substantially as stated by the other witnesses introduced by the tenant, respecting the occupation of the farm during the last fifty years.

The witnesses for the tenant, on cross-examination, all stated, that as long ago as they could recollect, John Hunt, together with his wife and children, lived on the demanded premises. That John Hunt was insane at times, and that the farm was carried on by the family. Nearly all of said witnesses knew John Hunt when his children were boys, and they testified that ever since they knew him, he had lived on the farm; and that he continued there till he died.

The evidence on both sides being all in, and several objections to the demandant's right to recover being ruled in his favor, for the purposes of this trial, a verdict was taken for the de-mandant, by consent, subject to the opinion of the whole court, upon the facts and evidence to be reported, and all such just inferences as may be drawn from them.

If the court are of opinion, upon the whole case, that the demandant is not entitled to recover, the verdict to be set aside and the demandant to be nonsuit. If the court are of opinion upon the whole case, that the demandant has the bettei right, then judgment to be entered on the verdict for the de mandant; or if after deciding the said questions of law, the court are of opinion that it ought to be left to a jury, upon the

questions of fact, to find whether the demandant's ancestor was seized, or whether he was disseized by Ebenezer Hunt in his lifetime, or whether there is proper and competent evidence, from which the jury might infer a non-appearing deed or other good title to the said Ebenezer Hunt, or any other agreement or other fact, from which the tenant can derive and show a better right and title than the demandant ; then the verdict to be set aside and a new trial ordered.

*Robinson,* for the tenant. There is no record evidence of title in John Hunt. His seizin was inquired into under the notice attached to the plea of the general issue. The exclusive possession of Ebenezer, from 1807 till his death, gives the tenant the three first stages or degrees of a perfect title, viz. possession, apparent right of possession, and actual right of possession. This is a strong presumption of the right of property in the tenant, and she ought not to be deprived of this title, unless on very clear proof of the mere right of the demandant. 2 Bl. Com. 195 – 198. 3 Bl. Com. 178, 190, 191.

What title has the demandant shown ? Admitting that it is proved that the demandant's father lived on the farm 40 years, from 1767 to 1807, and that this possession is presumptive evidence of a seizin in fee ; still it is but a presumption of title, because he might, for aught that appears, have been tenant for life, for years, or by the curtesy. His possession was not long enough to give him the absolute right of possession ; because, before *St.* 1807, c. 75, fifty years' possession was necessary to give such right. The demandant, therefore, has not shown so high a degree of title as the tenant. There is, then, presumption against presumption : Presumption in favor of the tenant — possession, apparent right of possession, and actual right of possession. Presumption in favor of the demandant — possession and apparent right of possession only. The tenant has the stronger presumption. *Jayne* v. *Price,* 5 Taunt. 326. *S. C.* 1 Marsh. 68. 2 Stark. Ev. 522, *note (k).* Stearns on Real Actions, 385. *Doe* v. *Cooke,* 7 Bing. 346.

Mere possession is sufficient to maintain a writ of right against a tenant who can show nothing better ; and the prior possession

will prevail. But can mere prior possession, say for one year, prevail over a subsequent possession of thirty years ? Such a doctrine is repugnant to the whole theory of real actions.

It is necessary to aver, in a writ of right, that the demandant, or his ancestor, was seized in his demesne as of fee and right. *Dowland* v. *Slade*, 5 East, 272. The issue is, which party has the better right. *Arnold* v. *Arnold*, 17 Pick. 4. This doctrine of the different degrees of title, and different degrees of presumption, and different kinds of proof to enable the demandant to recover, is supported, not only by the above cases, and by the best elementary writers, but results from the theory of real actions. Co. Lit. 239 *a*, *note* (155). 3 Bl. Com. 176, Chitty's *note*. The demandant, not having shown so high a degree of title as the tenant, ought not to recover.

There is no evidence of a taking of esplees by the deman dant's ancestor. This indeed is mere evidence of title, and not necessary where a record title is shown. But where there is no record title, as in this case, the taking of esplees ought to be proved, as that is necessary to establish possession. And it must be shown that the ancestor took esplees, if there were any, within forty years. *Widdowson* v. *Earl of Harrington*, 1 Jac. & Walk. 547, 548. *Dumsday* v. *Hughes*, 3 Bing. N. R. 439. S. C. 4 Scott, 209.

It was not necessary that there should have been an actual amotion of John Hunt, in order to prevent his taking esplees. *Clapp* v. *Bromagham*, 9 Cow. 553. *La Frombois* v. *Jackson*, 8 Cow. 590.

Where thirty years run against the ancestor, the heirs are barred, because no right descends. 1 Preston's Abstracts, 266. 2 ib. 347.

Darrein seizin is a good bar to a writ of right. Jackson on Real Actions, 285 – 287. So that if the demandant asserts that he is disseized only at his election, he cannot maintain this writ.

Shorter subsequent possession is stronger than longer prior possession. *Smith* v. *Lorrillard*, 10 Johns. 338. *Jackson* v *Hubble*, 1 Cow. 613. *Jackson* v. *Denn*, 5 Cow. 200.

It is to be presumed, if necessary to the tenant's defence, that Ebenezer obtained a title by grant. *Ricard* v. *Williams*, 7 Wheat. 109. *Doe* v. *Prosser*, Cowp. 217. *Jackson* v. *Whitbeck*, 6 Cow. 632. 3 Stark. Ev. 1201, & seq. *White* v. *Loring*, 24 Pick. 319. *Melvin* v. *Proprietors &c.* 17 Pick. 255.

*Farley & R. G. Colby*, for the demandant. The demandant rests his claim on the *possession* of John Hunt for more than forty years. Actual possession is *primâ facie* evidence of a legal seizin. Per Parsons, C. J. 7 Mass. 199. S. P. 15 Mass. 213. As no title deeds appear, the prior possession of John is stronger evidence of seizin than the subsequent possession of Ebenezer. *M'Cobb* v. *Hearndell*, 4 Dane Ab. 19 *Nase* v. *Peck*, 3 Johns. Cas. 128. See also Bul. N. P. 103. Stearns on Real Actions, 241, 242. *Stokes* v. *Berry*, 2 Salk. 421. *Denn* v. *Barnard*, Cowp. 595. *Green* v. *Watkins*, 7 Wheat. 27.

John Hunt continued seized until his death. Seizin is presumed to continue, unless the contrary is proved. Plowd. 193. 431. *Proprietors of Kennebeck Purchase* v. *Springer*, 4 Mass. 417, 418. The possession of the premises, after Ebenezer returned from Ackworth, was, at the most, a joint or mixed possession. There was no exclusive possession by Ebenezer, and of course no disseizin of the father. 4 Mass. *ubi sup.* *Waldron* v. *Tuttle*, 4 N. Hamp. 376.

There is no presumption of a grant from the father while he was insane ; and a grant from the other heirs is not to be presumed within the time when the statute of limitations attaches. *Ricard* v. *Williams*, 7 Wheat. 110. Mathews on Presump. Ev. 16. Lapse of time is the cause for resorting to a writ of right ; and in almost every case, a grant might be as well presumed as in this.

*Choate* replied.

WILDE, J. This is a writ of right, in which the demandant demands possession of an undivided fourth part of a certain tract of land described in the writ. The action was commenced in the year 1839, before the limitation of real actions by the

Rev. Sts. *c*. 119, took effect    The demandant counts on the seizin of John Hunt, his father, within forty years before the commencement of the action ; and the first question to be decided is, whether the seizin of John Hunt is satisfactorily proved by the evidence reported.   No record title in John Hunt, nor in any other person, was produced at the trial ; but it was proved by sundry aged witnesses, that from seventy to eighty years since, and as far back as the memory of any of the witnesses extended, the farm in question was in the possession and occupation of the said John Hunt ; that he lived on it with his wife and children, taking the profits, and continued his resi dence there, until his death in 1807.   There is no evidence of any prior possession or elder title ; and it cannot be doubted that proof of such an ancient and long continued possession and occupation is good *primâ facie* evidence of a seizin in fee simple.   In a writ of right, as well as in a writ of entry, a title by disseizin is a good and sufficient title, unless a better can be shown by the tenant.   Lit. § 478.   If, then, John Hunt had no better title, he had a good title by disseizin ; for we consider the evidence as establishing the fact beyond controversy, that he was in possession of the premises for more than forty years, and died seized ; for there is no proof that he was disseized by his son Ebenezer, under whom the tenant claims.   His possession was not adverse, and must be presumed to be under his father ; and if he had concurrent possession with his father, that certainly would not constitute a disseizin.

It has been objected, that since the time when Ebenezer first began to take the principal management of the farm, the esplees were taken by him ; but considering him as occupying under his father, this is not a valid objection.   The taking by the tenant is the taking by the landlord.   4 Dane Ab. 29, 30.   And from the whole evidence, there can be no question that the possession or occupation by Ebenezer was by the permission of his father, so far. as he was capable of giving permission, and with the acquiescence of his mother and the rest of the family.   We are of opinion, therefore, that the seizin of John Hunt continued up to the time of his death, and that during his lifetime, the profits

of his farm must be considered as taken by him, or for his use and benefit.

The next question to be determined is, whether Ebenezer Hunt had, after the death of his father, gained a good title by disseizin. He continued in the possession of the premises for more than thirty years after that event; and the tenant's counsel contend that he thereby gained a good title, by disseizin, against the other children and heirs of John Hunt. This question involves another, namely, whether the plea of darrein seizin is a good plea in a writ of right. This is said to be doubtful; but the grounds of doubt do not seem to be stated with precision, nor to be satisfactory. Roscoe, in his Treatise on Real Actions, Vol. I. p. 206, says, that " the reason given against such a plea is, that the tenant may tender the demi-mark, and have the ancestor's seizin inquired into." This reason for the doubt is not stated by Judge Jackson, in his Treatise on Real Actions, p. 285; and, upon the authorities, the doubt does not seem to rest on any reasonable and substantial ground. In the writ of *mort d' ancestor*, in formedon in the descender, in *nuper obiit*, and in a writ of cosinage, as well as in a writ of entry, it is a good plea that the demandant himself was seized after the death of the ancestor. Roscoe, *ubi sup*. And we think, notwithstanding the doubts suggested, that it is a good plea or defence in a writ of right. The tenant, however, has failed to make out any such defence. There is no evidence that the demandant ever entered the premises after the death of his father, and became actually seized of his share therein; and before the revised statutes, he could not maintain an action, counting on his own seizin. In a writ of entry, or a writ of right, the demandant must count on an actual seizin, and a seizin in law is insufficient. Before entry by the heir, after the death of the ancestor, or an equivalent act, he cannot maintain an action of trespass, or writ of entry on his own seizin, unless the land be vacant and unoccupied. Plowd. 142. 2 Rol. Ab. 553. *Wells* v. *Prince*, 4 Mass. 67. *Dally* v. *King*, 1 H. B. 1. Bac. Ab. Trespass, E. 3.

The law, in relation to the question under consideration, is correctly stated in 2 Preston's Abstracts, 345. " The writ of

entry sur abatement," he says, " must necessarily be grounded on the seizin of the ancestor ; and therefore fifty years is the limitation within which a writ of entry sur abatement must be brought. It does not seem to have ever been supposed that the disseizin was to the heir, so as to bar him, unless he should bring his action within thirty years." Nor can it be maintained, as a ground of defence, that by the entry of Ebenezer Hunt, after the death of his father, all the heirs became actually seized ; because, unless his entry was adverse to the claims of the other heirs, there is no evidence of a disseizin ; and on that ground the defence fails.

The remaining ground of defence in support of the tenant's title, and that on which his counsel seem principally to rely, is the presumption, arising from the long possession of Ebenezer Hunt, that the premises were conveyed to him by his father, or that the other children and heirs have relinquished their shares therein to him, since the death of their father. As to the pro sumption of a deed from the father, we think there is clearly no ground on which it can be maintained. Nor was it much relied on at the argument. The father had not the mental capacity to make a legal conveyance of his property, or any other binding contract ; and the occupation of Ebenezer with his father is no ground for the presumption of a conveyance from him, had he been of a capacity to make a legal conveyance. Ebenezer, for a number of years before his father's death, had the principal but not the sole management of the farm, as the demandant had, before the return of Ebenezer from Ackworth ; but the father and the mother assisted. This joint or mixed possession and occupation is certainly no foundation for the presumption of a grant.

The question then is reduced to this, namely, whether the possession of Ebenezer, after the death of his father, is a sufficient foundation for the presumption of a grant or release from the other children. It must be admitted that there is no legal or artificial presumption of any such grant. " In general," as remarked by Story, J. in *Ricard* v. *Williams*, 7 Wheat. 110, " it is the policy of courts of law, to limit the presumption of

grants to periods analogous to those of the statute of limitations, in cases where the statute does not apply.   But where the statute applies, it constitutes ordinarily a sufficient title or defence." So Lord Mansfield says, in *Eldridge* v. *Knott*, Cowp. 216, " there is no instance of setting up any length of time within the imitation fixed by the statute, as a bar to the demand."   And so Aston, J. remarked, in the same case, that mere length of time, unaccompanied with other circumstances, ought not to alter the limitation fixed by the statute, and set up another.   If the law were otherwise, it would effectually alter and do away with the intended operation of the statute of limitations.   That impliedly declares, that in a writ of right no disseizin or adverse possession shall be a bar unless it continues for forty years.

Now in the present case there are no circumstances superadded to the adverse possession of Ebenezer Hunt — if his possession were adverse — leading to the conviction or belief that he ever had a grant from the other children and heirs.   On the contrary, the circumstances, which were proved, rather tend to weaken the presumption of any such grant.   There would have been more reason for the presumption, if the occupation had been by a stranger.   Ebenezer had a right to continue his occupation as one of the heirs ; and there is no clear proof that his occupation was intended to be adverse to the claims of the other heirs.   He had made considerable advances during the life of his father, in repairing the house, building a barn, and for other expenses, for which he expected, probably, to be reimbursed from the profits of the farm.   To this the other heirs could not reasonably object.   And this may account for their forbearance to claim any share of the profits.   Another circumstance, suggested by the demandant's counsel, might have some influence to prevent them from interposing any such claim.   It appeared that Ebenezer had acquired a large estate, which his brothers and his sister might reasonably expect to inherit ; and if so, they might have been unwilling to advance claims that perhaps might give offence.   But whether these suppositions are probable or not, we think there is no evidence to warrant the inference, that a conveyance to Ebenezer from the other heirs has ever been

made. The probability of such an act is not sufficient. The evidence to support a natural presumption of a fact must be such as to lead the mind to a conscientious belief of its existence, beyond a reasonable doubt This the evidence in the present case fails to do.; and, as it seems to us, it fails to establish a reasonable probability of any such conveyance as is set up by the tenant to defeat the demandant's right. That right is not barred by the statute of limitations, and ought not, therefore, to be defeated by any presumption or inference not supported by convincing and satisfactory evidence.

*Judgment on the verdict.*