Begg *v.* Ganson.

WILLIAM BEGG *vs.* CHARLES M. GANSON, JR., & others, trustees.[1]

No. 92-P-870.

Middlesex. February 1, 1993. - March 12, 1993.

Present: ARMSTRONG, BROWN, & PORADA, JJ.

*Adverse Possession and Prescription. Practice, Civil,* Summary judgment.

In a civil action the defendants' motion for summary judgment was properly allowed on the plaintiff's claim of ownership by adverse possession of a riding stable, and an adjoining house and corrals, and a prescriptive easement in certain bridle paths, all of which are part of a 161-acre estate, where nothing in the plaintiff's affidavits and exhibits indicated that he would be able to meet his burden of showing by clear evidence that his use, which was nonexclusive, indefinite in time, flexible in nature, and had begun with explicit permission, had shifted at some point from permissive to adverse, so as to put the defendants on clear notice that they should take steps to protect their rights. [219-221]

CIVIL ACTION commenced in the Superior Court Department on February 16, 1990.

The case was heard by *J. Owen Todd,* J., on a motion for summary judgment.

*Sanford A. Kowal* for the plaintiff.

*Michael T. Gass (Joseph F. Hardcastle* with him) for the defendants.

ARMSTRONG, J. The plaintiff appeals from a judgment denying his claim of ownership by adverse possession of a riding stable, and an adjoining house and corrals, and a prescriptive easement in certain bridle paths, all of which are part of the 161-acre Paine estate in Wayland. The plaintiff began living in the house in the 1930's, when he was the stable master for Frank C. Paine. A year after the latter's death

---

[1]The others are trustees under the wills of Charles J. Paine and Jeanie P. Thorndike.

in 1952, the plaintiff entered into a written agreement with Paine's children, who were beneficiaries of family trusts that held title to the real estate, subject to approval of the trustees. Under the agreement, approved by the trustees, the plaintiff would continue to occupy the stable rent-free, pay his own expenses, operate it as a boarding stable, and care for certain named Paine horses either free of charge or for a fixed monthly charge. The agreement also provided that the plaintiff would not "under any circumstances . . . use the premises as a riding stable [,provided, however, that] people who board horses on the premises will be permitted to ride on the paths over our land for the purpose of leaving and returning to the property." The plaintiff, it was understood, was to vacate the premises on notice either from the Paine children or from the trustees, and he was to "keep the inside of the premises in the same condition as it is now in." The plaintiff was also permitted to use "those lots of land pointed out to [him] from time to time by our Mother," i.e., Virginia Paine, the widow of Frank C. Paine, who continued to live in the family house until her death in 1987.

In 1989 the trustees asked the plaintiff to vacate the premises. He refused and asserted this claim to ownership by adverse possession of the stable, house, and associated corrals, and to a prescriptive easement on certain bridle paths. No question is raised that his occupancy and use were not open, notorious, and continuous for the requisite period. Nor is there any question that his occupancy and use were permissive in their inception. The plaintiff's claim, in essence, is that his occupancy became adverse when he violated or exceeded the terms of the 1953 agreement, first, by extending the stable by the addition of a concrete block structure containing ten stalls, and, second, by opening a public riding stable.[2] As to the first, he asserts (by way of affidavit) that he

---

[2]The plaintiff also contends that he exceeded the terms of the agreement by continuing to occupy the house that adjoined the stable; but it is clear in context that the stablemaster's house was thought of as a part of the stable and that his continuing occupancy of it was contemplated by the agreement.

was told by Virginia Paine and one of the trustees to desist from building the extension.[3] The second is clearly contravened by the terms of the agreement as written. The plaintiff also claims to have cleared, at will, new bridle paths in the general vicinity of the stable and certain fields near the stable for use as corrals and riding fields. The Paines acquiesced in the liberties taken by the plaintiff in managing the areas near the stable without seeking to terminate the agreement.

In all other respects the Paines and the plaintiff seem to have coexisted amicably. The affidavits in support of the defendants' motion for summary judgment leave uncontested that Virginia Paine would, from time to time, shoo stray riders off the bridle paths on the areas of the estate that the family reserved for its sole use, directing them to use the paths on the plaintiff's side of the estate. Similarly she threatened the plaintiff that she would close the stable down if he did not keep his horses off the family's private bridle paths and fields. The bills and vouchers establish that, over the years, repairs and improvements to the stables were paid sometimes by the plaintiff and sometimes by the trust. The trust paid all the real estate taxes on the property. Paine horses were from time to time boarded by the plaintiff without compensation, and Paine family members would occasionally use the bridle paths and other facilities adjacent to the stable.

The plaintiff acknowledges the general rule that a use that commences with permission is presumed to continue with permission, *Hall* v. *Stevens*, 9 Met. 418, 422 (1845), but he urges that his violations of the written agreement (i.e., the operation of a public riding stable) and actions arguably in excess of its terms (building the stable extension, clearing new bridle paths) converted what hitherto had been a permissive use into one that was adverse. The only case he cites that seems factually comparable is *Kruvant* v. *12-22 Wood-*

---

[3]He also contends that the construction of the addition violated the term of the agreement itself relative to "keep[ing] the inside of the premises in the same condition as it is now in;" but the agreement is at least ambiguous in this respect.

*land Ave. Corp.*, 138 N.J. Super. 1 (1975). There a two-year written license to a riding stable to use an 800-foot bridle trail that crossed the plaintiff's land expired and the use continued without interruption for a period in excess of that required for prescription. In that case, however, the servient land was conveyed after the expiration of the written license to the plaintiff's predecessor in title, ending any implied license, and the use from that time was deemed adverse. Compare *Bond* v. *O'Gara*, 177 Mass. 139, 142 (1900). Even more remote, factually, is *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453 (1984), in which one branch of heirs to a family farm on Martha's Vineyard took it over and farmed it actively and exclusively, without accounting for profits, for a period in excess of ninety years. This was held to defeat the claim of another branch of the family, which had moved off the island and had asserted no rights to the farm for nearly a century. In the present case we have no such exclusivity of use and benefit. The Paine family remained in continuous occupation, sharing the land with the plaintiff, and benefiting over the years from maintenance of the stable and associated grounds by the plaintiff, without expense to the Paine family, other than the payment of all real estate taxes and occasional contributions to costs of repair to the stable.

On the evidence that the parties by affidavits and exhibits showed themselves able to present, a jury could not properly be permitted to infer an ouster of the Paines from the stable portion of the property, as contrasted with acquiescence in the plaintiff's transgressions. While the plaintiff's operation of the public riding stable and the construction of the stable extension (both of which seem to have been necessary to put the stable operation on an economically self-sustaining basis) may have conflicted with one or two terms of the original agreement, neither could properly be found to have vitiated the entire understanding with the Paines. With the Paines continuing to occupy the property and to use, from time to time, the stable and its paths; with Virginia Paine continuing to define the outer bounds of the portion of the property that the stable's riders and its horses could enter upon; and with

the Paines (or, more accurately, the family trust) continuing to assist from time to time in the maintenance of the stable, there was no such unambiguous act of ouster as would warrant a jury in finding the commencement of an adverse user. Where a use begins in explicit permission, particularly one such as this that is nonexclusive, indefinite in time, and flexible in extent, there is and should be a heavy burden on the lessee or licensee to show by clear evidence that the use has shifted at some point from permissive to adverse, so as to put the owner on clear notice that he should take steps to protect his rights. Nothing in the plaintiff's affidavits and exhibits indicates that he would be able to meet that burden. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The motion for summary judgment was properly allowed.

*Judgment affirmed.*