Albert J. Lawrence *vs.* Town of Concord.

Middlesex. February 6, 2003. - May 19, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Adverse Possession and Prescription.*

In an action for damages under G. L. c. 79, § 14, brought by a landowner (plaintiff) who claimed title to land through a specific devise from a prior occupant who, it was claimed, perfected title through adverse possession, against a town that had, perhaps as late as 1997, become aware that it had received a specific devise of the same land under a will that was probated in 1942, and whose response was to exercise its power of eminent domain as to the land in question but to pay the plaintiff no damages, a Superior Court judge erred in concluding that the plaintiff failed to establish title to the land through his predecessor's adverse possession, where the plaintiff's predecessor's possession (from 1965 until 1996) was exclusive, continuous, and adverse to the town's ownership for a period of at least twenty years, and where the town's lack of knowledge as to its ownership did not defeat the plaintiff's predecessor's perfection of title by adverse possession; consequently, this court remanded the case to the Superior Court for a determination of the damages owed to the plaintiff arising from the town's eminent domain proceeding. [419-427]

Civil action commenced in the Superior Court Department on April 8, 1999.

The case was heard by *Elizabeth M. Fahey*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Erin R. Boisvert* (*Laurence S. Boisvert* with her) for the plaintiff.

*Kenneth W. Salinger* for the defendant.

Spina, J. Perhaps as late as 1997, the town of Concord (town) became aware that it had received a specific devise of land located at 1586 Main Street in Concord (locus), under a will that was probated in 1942. Albert J. Lawrence claimed title to the same locus through a specific devise from Joseph Frazier

(Frazier), a prior occupant of the locus whom Lawrence claims perfected title through adverse possession. The town's response was to exercise its power of eminent domain as to the locus but pay Lawrence no damages. Lawrence brought an action for damages under G. L. c. 79, § 14.[1]

On cross motions for summary judgment a Superior Court judge concluded that Lawrence failed to establish title to the locus through Frazier's adverse possession because "Frazier's possession could not have been notorious or adverse where the [t]own did not have notice of its ownership" of the locus. The Appeals Court affirmed. *Lawrence* v. *Concord*, 56 Mass. App. Ct. 70 (2002). The Appeals Court held that the "evidence was ample, and essentially uncontradicted" that, from 1965 until Frazier died in 1996, his possession was "exclusive, continuous, and adverse to the town's ownership for a period of at least twenty years." *Id.* at 73. However, the Appeals Court determined that the occupation was "not open and notorious" because the town had no knowledge that it owned the property. This, the court held, prevented Frazier from acquiring title to the locus by adverse possession. *Id.* at 77. We granted Lawrence's application for further appellate review. We conclude that the town's lack of knowledge as to its ownership did not defeat Frazier's claim of title by adverse possession, and remand to the Superior Court for a determination of the damages owed to Lawrence arising from the town's eminent domain proceeding.

1. *Facts.* The following uncontradicted facts are found in the record.[2] In a properly executed and witnessed holographic will dated August 27, 1941, Mary J. Burke left the locus, her home and real estate, to her daughter, Helen E. Burke Boyer, "never to be sold. After she goes I wish to have my home go to my adopted daughter Harriet Burke Frazier. If no children survive

---

[1]General Laws c. 79 in general treats the issue of takings of real property by eminent domain. Section 12 allows for the payment of compensation for property taken by eminent domain, and § 14 allows a person who claims to be entitled to an award of damages under c. 79 to petition the Superior Court of the county where the land is situated for an award of damages.

[2]Although the town disputes some portions of the factual record, it has failed to create a genuine issue of material fact by setting forth "specific facts" in an affidavit or otherwise. Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). See *Langton* v. *Commissioner of Correction*, 34 Mass. App. Ct. 564, 571 (1993).

said Harriet Burke Frazier I wish to have my home with land theron [*sic*] go to the town [Concord] to be used as they [*sic*] see fit and proceeds from same to be used for better education of some deserving children." Mary J. Burke died on August 4, 1942, and her will was allowed on September 14, 1942. On November 30, 1964, Helen E. Burke Boyer conveyed her life interest in the locus to Harriet Burke Frazier by a deed with quitclaim covenants. Harriet Burke Frazier had married Joseph Frazier on December 5, 1937. On May 18, 1965, Harriet Burke Frazier died, survived by Joseph Frazier, but without issue.

Subsequent to his wife's death, Joseph Frazier rented the locus for a period of years while he lived at another site in Concord where he and his late wife had run a small store. The first rental that is shown in record was to a Michael DiPietro, and is evidenced by a summary process action in the District Court of Central Middlesex brought by Frazier against DiPietro for possession and unpaid rent. The action was successful and a writ of possession and execution was delivered to Frazier on May 17, 1968, covering rents due from September 5, 1967, through February 1, 1968. The record also shows that Margaret and Raymond Dornig lived at the locus between 1969 and 1973. From at least 1969 until his death in 1996, Joseph Frazier received and paid all of the real estate tax bills on the locus.[3]

The annual "street lists" of the town, kept pursuant to G. L. c. 51, §§ 4 and 6, showed that Joseph Frazier lived at the locus on January 1, 1965 (with his wife and sister-in-law), and also from January 1, 1974, until he died on December 24, 1996. Uncontradicted affidavits filed in support of Lawrence's motion for summary judgment indicate that Frazier occupied the locus

---

[3]From 1965 to 1972 the bills were addressed to "Harriet Burke Frazier." From 1973 to 1980 the bills were addressed to the "Estate of Harriet Burke Frazier." From 1980 until 1996 the bills were addressed to "Joseph G. Frazier." Shortly before Frazier died, he gave Lawrence all the tax bills from 1969 to 1996. The town disputes whether Joseph Frazier paid the bills over the time period stated above, arguing that there is no proof that he paid them. However, the town has failed to provide any evidence to contradict the reasonable inference that the bills, which had been stamped "paid" and were in Frazier's possession, were paid by Frazier, or on his behalf. "Payment of taxes evidences a claim of ownership." *Bernard* v. *Nantucket Boys' Club, Inc.*, 391 Mass. 823, 826 (1984).

from as early as 1966, and certainly from the mid 1970's until his death. Neighbors and friends visited Frazier at his home at the locus, joined him for drinks, sat with him or saw him on his porch, and watched him gardening. One affiant, the executrix of Frazier's estate, reported that Frazier was "aware that the property at 1586 Main Street did not belong to him. [He was] nervous that the [t]own would find out that he did not own the property and kick him out."

On April 28, 1997, after Frazier's death, a lawyer for his estate contacted the town to bring the town's potential interest in the locus to its attention, and to inform the town that Lawrence, to whom Frazier devised the locus, was asserting that Frazier had acquired title to the locus by adverse possession.[4] In an attempt to clear title to the locus, the town's board of selectmen, on June 22, 1998, and pursuant to town meeting authorization, took the locus by eminent domain, "in fee simple . . . on behalf of the [t]own of Concord for municipal purposes, including the future sale thereof." Because the selectmen claimed to own the locus, they determined that "no damages have been sustained and none are awarded." At its 1999 annual town meeting, the town authorized the select-men to sell the locus "for a price no less than $150,000 [with covenants] intended to ensure that the property is purchased [by a person of low or moderate income]."

2. *The town's lack of knowledge.* Lawrence contends that Frazier satisfied all of the elements of adverse possession and that the doctrine does not protect parties who are ignorant of their interest. The town argues that, because it did not know that it owned the locus, it could not defend its title, and in these

---

[4]Although the town states that this letter was the first notice received by the town of its interest in the locus, the tax bills from the town in the record show that in 1990 and 1991, the bills were addressed to Joseph G. Frazier with the notation "old bill before deed history." Starting in 1992 and until 1999, the bills remain addressed to Joseph G. Frazier, but with a second address line replacing the above notation with "c/o Town Manager — Town of Concord." The significance of this change is not clear, but it may indicate that at least some arm of town government was aware of the town's ownership interest in the locus as of 1992. Because the critical time period for the success of Frazier's claim of adverse possession is from at least December 9, 1967, until December 9, 1987, the issue is not necessary to our decision, and can safely be disregarded. See Part 3 and note 8, *infra.*

circumstances it would be inequitable to allow Frazier to acquire title by adverse possession. The town further argues, and the Superior Court judge and the Appeals Court agreed, that Frazier's possession of the property was not sufficiently "open" and "notorious" to place the town on actual notice of its ownership interest in the locus.

The Appeals Court reasoned that Frazier's "use was not open because the true owner, the town, neither knew nor reasonably should have known of its ownership or that the nature of Frazier's use changed when Harriet died, becoming adverse to the town's ownership," and that "[n]othing in Frazier's conduct or use should have alerted the town, or anyone else, to the town's interest." *Lawrence* v. *Concord*, 56 Mass. App. Ct. 70, 74 (2002). In reaching its conclusion, the Appeals Court relied on *Foot* v. *Bauman*, 333 Mass. 214, 218 (1955), where this court adopted the rule in 2 American Law of Property § 8.56 (Casner ed. 1952), which states: "To be open the use must be made without attempted concealment. To be notorious it must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. It is not necessary that the use be actually known to the owner for it to meet the test of being notorious." The reference to knowledge in § 8.56 pertains to the owner's knowledge of the adverse possessor's use of the property, not the owner's knowledge of ownership.

Moreover, *Foot* v. *Bauman*, *supra*, did not involve an owner who had no knowledge of his interest in the subject property. The focus of the case was a neighbor's use of the property and the owner's actual or constructive knowledge of that use. The neighbor and his predecessors had maintained a sewer line below the surface of the property, unbeknownst to the owner, who had purchased the property after the sewer line had been installed. The owner did not discover the sewer line until after it had been in use for more than twenty years. When the owner sued to enjoin its use, the neighbor claimed an easement by prescription. The owner contended that the neighbor's use was not open and notorious because the sewer line had been concealed from view. A master found facts from which the

court concluded that the owner could have ascertained the existence of the sewer line through a reasonable degree of supervision of the property, and determine that the use of the sewer was sufficiently open and notorious to create an easement by prescription.

"Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." *Kendall* v. *Selvaggio*, 413 Mass. 619, 621-622 (1992), quoting *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964). G. L. c. 260, § 21. The burden of proving adverse possession is on the person claiming title thereby and "extends to all of the necessary elements of such possession." *Mendonca* v. *Cities Serv. Oil Co. of Pa.*, 354 Mass. 323, 326 (1968), quoting *Holmes* v. *Johnson*, 324 Mass. 450, 453 (1949).[5]

The purpose of the requirement of "open and notorious" use is to place the true owner "on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action." *Ottavia* v. *Savarese*, 338 Mass. 330, 333 (1959). There is no requirement that the true owner be given explicit notice of adverse use. See *id.* at 334 ("Where the user has acted, without license or permission of the true owner, in a manner inconsistent with the true owner's rights, the acts alone . . . may be sufficient to put the true owner on notice of the nonpermissive use"). See also *Gray* v. *Cambridge*, 189 Mass. 405, 418 (1905); *Samuels* v. *Borrowscale*, 104 Mass. 207, 210 (1870) ("All that is necessary . . . is actual, adverse and exclusive possession, so open and notorious that it may be presumed to have been known to the rightful owner. . . . Special notice to the [true owner], either by act or word, that the [adverse possessor] held in defiance of or repudiated his title, was not necessary"); *Poignard* v. *Smith*, 6 Pick. 172, 178 (1828) (where true owners were both out of Commonwealth, adverse possession was still made out because "acts

---

[5]Occasionally an additional requirement that the land be held under a "claim of right" can be found. Chief Justice Holmes suggested that a more accurate way to describe this requirement is "to say, 'with an intention to appropriate and hold the same as owner, and to the exclusion, rightfully or wrongfully, of every one else.' " *Bond* v. *O'Gara*, 177 Mass. 139, 144 (1900). Frazier's possession also met this requirement.

of notoriety, such as building a fence round the land or erecting buildings upon it, are notice to all the world").

Open and notorious use of a property is thus deemed to place the true owner on constructive notice of such use, and it is immaterial whether the true owner actually learns of that use or not. The elements of "open and notorious" use, central to this case, are descriptive of the adverse possessor's acts of possession and use. An owner's knowledge of its interest is not an element of proof of a claim of adverse possession, and an owner's lack of knowledge of ownership is not a defense to such a claim. See *Kendall* v. *Selvaggio, supra* at 622 & n.5, and cases cited (neither mutual mistake nor unilateral misunderstanding concerning boundary location, examples of ignorance of ownership, will defeat claim of adverse possession).

Finally, we reject the argument that the owner must have knowledge of its interest for the same reason that we have rejected a requirement of actual knowledge of the adverse use. It "would deprive the principle of [adverse possession] of much of its value in quieting controversy and giving sanction to long continued usages." *Foot* v. *Bauman, supra* at 217-218. "Long dormant claims to title could rise from the dust bin of history and many titles would become unsettled." *Allen* v. *Batchelder,* 17 Mass. App. Ct. 453, 457 (1984).

The town next alleges that Frazier took steps to conceal his lack of ownership, and thus his possession was atypical of the open and notorious possession needed to sustain the burden of proof.[6] There is no evidence that Frazier perpetrated a fraud on the town, as the Appeals Court correctly concluded. See

---

[6]For example, the town claims that the information contained in the street lists only shows that Frazier lived at the locus *on* January 1 of each of the years between 1974 and 1996, and not between January 2 and December 31 of those years. Although this is one possible interpretation, it is not a reasonable one, and the town provides no facts to contradict the affidavits of the neighbors that represent that Frazier lived on the property as a normal neighbor. The town's interpretation is not supported by facts in the record, and we reject it.

The town also argues that Frazier's failure to include the locus as property of his wife on an inheritance tax form he filled out after her death is an indication of wilful and possibly fraudulent misrepresentation. Because his wife had only ever had a life estate in the locus, it was in fact accurate to state that after her death she did not own the locus, or have the power to dispose of

*Lawrence* v. *Concord, supra* at 77. To the eyes of the world around him, Frazier's possession and use had all the usual indicia of ownership. His possession and use provided sufficient notice to support a claim of adverse possession. He had no duty to disclose his lack of ownership or to enlighten the town as to its interests.

Adverse possession as a doctrine assumes that the adverse possessor may be acting with the hope and even the intent to conceal that he has no valid interest in the property. Because his use is open to the world to see and he appears to be acting as though he were a true owner, the inner workings of his mind are irrelevant. See *Totman* v. *Malloy,* 431 Mass. 143, 146 (2000), quoting *Kendall* v. *Selvaggio, supra* at 624 (adverse possessor's state of mind or mental attitude is not relevant, only his actions "provide notice of nonpermissive use to the true owner"). "So long as a man is in possession of land claiming title, however wrongfully, and with whatever degree of knowledge that he has no right, so long the real owner is out of possession in a constructive as well as an actual sense. It is of the nature of the statute of limitations when applied to civil actions, in effect, to mature a wrong into a right, by cutting off the remedy." *Humbert* v. *Rector, Churchwardens & Vestrymen of Trinity Church in the City of N.Y.,* 24 Wend. 587, 604 (N.Y. 1840). Ignorance by the true owners of the fact that a wrong is being committed

the locus in her own will. Cf. 830 Code Mass. Regs. § 65C.2.1 (6) (a) (1993) (property transferred with retained life estate includable in Massachusetts gross estate).

In addition, the town points to Frazier's unwillingness to have a title search run on the property as an indication that he was afraid that his adverse possession would be discovered. That may be, and as stated above, adverse possessors may live in trepidation of discovery before the statutory period has run. But Frazier had no obligation to run a title search and his failure to do so has no probative value for any live issue in this case.

Finally, the town claims that Frazier's failure to have the town change the names under which the tax bills on the locus were sent "suggest[s] that Frazier attempted to avoid alerting the Town to its interest in the parcel." A taxpayer is under no affirmative obligation to see to it that the assessors properly address tax bills, unless requested by the assessors to submit the name and address of the true owner. G. L. c. 184, § 8A. Here there was no evidence of any such request of Frazier by the town's assessors. When the bills arrived at the property Frazier paid them. He fulfilled all the responsibilities that were required of him. Moreover, beginning in 1980, the bills were addressed to him.

against them is not among the "disabilities enumerated by the statute of limitations . . . ." "The statute [on its terms] bars the man who has been out of possession for twenty years, and no one is the less out of possession, because the man who is in may know that his possession is tortious." *Id.* at 605, 611-612.

An adverse possessor has no burden to reveal his intentions to the true owner absent a special relationship between the parties, as, for example, between a licensor and licensee, where a repudiation of the earlier relationship is necessary to establish a claim of adverse possession. Where a special relationship exists the putative adverse possessor is required to give actual notice to the true owner of the change in status from permissive to adverse. See Restatement of Property § 458 comment j (1944). There was no special relationship here.

The Appeals Court points to *Begg* v. *Ganson*, 34 Mass. App. Ct. 217 (1993), for the proposition that Frazier's use was initially permissive (as husband to his wife) and that, in those circumstances the burden of showing that the use has shifted from permissive to adverse is heightened. *Lawrence* v. *Concord*, *supra* at 75. The *Begg* case, however, is distinguishable. It involved a special relationship contemplated by § 458 of the Restatement. Specifically, it involved a landlord-tenant relationship. The tenant had occupied the property for thirty-seven years under a written agreement. When the landlord attempted to terminate the agreement, the tenant claimed adverse possession by virtue of his continuous breach of certain terms of the agreement for over twenty years. The court disagreed and said that where possession is initially permissive, the one claiming adverse possession has a "heavy burden" to show that the character of the possession changed so drastically as to put an owner on notice that "he should take steps to protect his rights." *Begg* v. *Ganson*, *supra* at 221. Here, as between the town and Frazier, there was no special relationship, and the town did not give Frazier specific permission to occupy the locus. The town was aware, as reflected by tax bills addressed to the "Estate of Harriet Burke Frazier," that Frazier's wife had died. Frazier's use of the locus was adverse to the interests of the town from the moment of his wife's death.

The statute of limitations to recover possession of land runs

against the true owner after twenty years if the adverse possessor satisfies the elements of adverse possession. All that was required of Frazier was that he occupy the locus without the permission of the true owner, continuously for twenty years, exclusively, openly, notoriously, and adversely to the true owner, thereby giving notice to the world of his possession.[7]

3. *Statutory bar to adverse possession against the town.* The town argues that, because the locus was given to the town and held for a public purpose it is exempt from adverse possession, under G. L. c. 260, § 31,[8] and that Frazier's claim of adverse possession fails because he had not occupied the locus for the requisite twenty years prior to December 9, 1987. The Appeals Court determined that Frazier's possession was "exclusive, continuous and adverse to the town's ownership for a period of at least twenty years. The evidence was ample, and essentially uncontradicted, that, from 1965 until Frazier's death in 1996, it was each of these things." *Lawrence* v. *Concord, supra* at 73. We agree.

The town argues that Frazier was not in possession of the parcel from December 9, 1967, until December 9, 1987, as required by St. 1987, c. 564, § 46. The town points to the fact that the street lists show Margaret and Raymond Dornig as the occupants of the locus from January 1, 1969, until at least January 1, 1973. In addition, Frazier's name appeared on the street lists as occupying another house from January, 1966, through January 1, 1973. Taken together, the town asserts that this evidence is sufficient to show that Frazier was not in possession

---

[7]As both parties point out, the laws in the Commonwealth have changed, requiring the executor of an estate to notify the beneficiaries of contingent interests set forth in a will of their interest within three months of the allowance of the will, thus rendering the facts presented by this case unlikely to be repeated. See G. L. c. 192, § 12, inserted by St. 1954, c. 465, § 1. That statute does not apply to the facts of this case.

[8]General Laws c. 260, § 31, inserted by St. 1987, c. 564, § 54, states in relevant part: "[T]his section shall not bar any action by . . . any political subdivision [of the Commonwealth], for the recovery of land . . . held for [a] public purpose." Statute 1987, c. 564, § 46, states: "The provisions of [§ 54] of this act shall not be construed to abrogate the rights of any person in an action to establish title by adverse possession who has seized or possessed real property . . . for no less than twenty years pursuant to [G. L. c. 260, § 31,] prior to the effective date of this act."

of the locus for the necessary twenty years prior to the effective date of implementation of G. L. c. 260, § 31.

A person claiming title by adverse possession need not personally occupy the land for twenty years. He may rely on the possession of his tenants, whose possession is his own. *Shoer* v. *Daffe*, 337 Mass. 420, 423-424 (1958). See *Reed* v. *Proprietors of Locks & Canals on Merrimac River*, 49 U.S. (8 How.) 274, 292 (1850) ("It cannot be denied, that an adverse possession may be kept up without a personal residence where the disseisor gives leases to tenants, puts them in possession, and receives the rents, claiming the land as his own"). Where DiPietro occupied the locus as Frazier's tenant from September 5, 1967, through February 1, 1968, and the Dornigs occupied the locus as Frazier's tenants[9] from about January 1, 1969, until at least January, 1973, their possession is the equivalent of Frazier's.

The town argues that the *Shoer* case should not apply because there the tenants were willing and compliant tenants who surrendered possession in an "orderly" fashion. It suggests that the fact that Frazier needed to go to court to obtain a judgment against his tenant (DiPietro) fundamentally changes the situation, and that DiPietro remaining on the property effected an ouster of Frazier that interrupted his possession for twenty years. The town is incorrect, however, because all that DiPietro (or the Dornigs) could have claimed was a leasehold estate as a tenant, whereas Frazier's claim is to the fee simple in the locus. Thus, even if DiPietro or the Dornigs interrupted Frazier's use of the property, they did not interrupt Frazier's underlying claim to ownership of the fee simple in the property. See *Bond* v. *O'Gara*, 177 Mass. 139, 143 (1900), quoting *Ricard* v. *Williams*, 20 U.S. (7 Wheat.) 59, 108 (1822) ("If [a] party claim

---

[9]Although the record does not show rental receipts from the Dornigs to Frazier during this time, there are sufficient indicia that the Dornigs were in the position of renters (including that tax bills continued to be sent to Frazier, that the Dornigs had no recorded ownership interest in the property, that the Dornigs moved in soon after DiPietro vacated, that Frazier moved in soon after the Dornigs vacated and that Frazier was regularly on the locus during the years that the Dornigs were renting) to justify a reasonable inference that the Dornigs were renting from Frazier. The town has failed to set forth any specific facts to the contrary.

only a limited estate, and not a fee, the law will not, contrary to his intentions, enlarge it to a fee").

The disposition of the case in the District Court, allowing payment of rent to Frazier, establishes that Frazier was in the position of landlord in regard to the locus as of, at least, September 5, 1967. Under the *Shoer* case, Frazier can thus count the time that his tenants occupied the locus toward the time required of him to make out a claim of adverse possession. The town's claim that Frazier was barred from perfecting a claim of adverse possession on the grounds that he did not establish possession prior to December 9, 1967, fails.

4. *Conclusion.* Frazier satisfied all the requirements for a claim of adverse possession of the locus. He occupied the locus for more than twenty continuous years, openly, notoriously, exclusively, and adversely to the true owner and without that owner's permission. At the end of that twenty years, he owned the locus and his devise to Lawrence was effective. As a result of the taking by the town, Lawrence is entitled to damages.

We reverse the judgment of the Superior Court and remand for a determination of the damages owed to Lawrence arising from the town's eminent domain proceeding.

*So ordered.*