Velis, Petera., J.

INTRODUCTION

This action grows out of a dispute between a property owner and the defendant, Gordon Paving, Inc. (“Gordon”), who was hired by her neighbor to pave a previously unpaved private way running by her property in Springfield. On July 18, 2002, the plaintiff Carol Moylan (“Moylan”) submitted this complaint to the Superior Court alleging trespass, nuisance and violation of G.L.c. 93A. Her complaint requested both damages and equitable relief. On April 13, 14 and 19, 2005, the action was tried without a juiy. After trial, both parties made cross-motions for directed verdict. Based upon all the credible evidence, this Court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

The plaintiffs property at 38 Green Lane abuts Atwater Place, a private way[1] established by deed in Springfield in 1919. In July 1998, neighboring property owners who use Atwater way to access their homes paid the defendant to pave Atwater Place. Moylan played no part in the paving of the way; neither did she object when the defendant actually put down the asphalt.
Testimony from witnesses at trial who surveyed the property line after the installation of the paving showed that the asphalt encroached on to Moylan’s property at some places along the way. This encroachment extended from a few inches to several feet. Moylan hired a landscaper to cut and remove the offending pavement. Moylan and the landscaper also noticed increased run-off from the paved way causing erosion and standing water and degradation of shrubs lining the way from salt washing off the roadway. In an effort to ameliorate the damage from the run-off the landscaper placed a timber berm along part of the way. A stonewall and a wooden fence marked the line along other parts of the way. This work was completed as of July of2001. However, the evidence showed that water continues to run onto Moylan’s property in a way it did not prior to the installation of the asphalt.
The plaintiff submitted an accounting and receipts showing costs for removal of the asphalt and repairs undertaken between December 13, 1998 and July 16, 2001, totaling $9,584.85. At trial, Moylan testified to the purpose behind each itemized charge.[2] The plaintiff could not remember the purpose behind two of these charges, one on July 11, 1999 for $93.36, and another on August 21, 1999 for $92.44 The plaintiff stipulated to the removal of these charges from her damages claim.
Also at trial an expert hired by both parties testified that large portions of the landscaping installed by Moylan, including sections of the timber berm, the stonewall and the split-rail fence, extended as far as nine feet out into the private way. As she herself testified, Moylan never had the properly line surveyed prior to having this landscaping done, but only after she felt her property had been invaded by Gordon’s paving.

RULINGS OF LAW

1. Statute of Limitations and Continuing Trespass

In its motion for directed verdict, the defendant argues that the plaintiffs action is barred by the statute of limitations on tort actions. G.L.c. 260,2A. The defendant argues that, at the latest, the plaintiff was aware of the trespass on her land in April of 1998. However, the plaintiff claims damages arising as early as December 13, 1998. Thus she clearly knew of some problem as of that date, and the statute of limitations began to run then. This action was not brought until July 18, 2002. The limitations in tort runs in three years. G.L.c. 260, §2A. Thus if the statute of limitations were to apply, the plaintiffs claims would be time barred.
However, a continuing nuisance or trespass “allows a plaintiff whose claim otherwise would be untimely to sue where its property rights are invaded from time to time because of repeated or recurring wrongs, resulting in new harm to the property on each occasion.” Taygeta Corporation v. Vartan Associates, Inc., 436 Mass. 217, 231 (2002), quoting Carpenter v. Texaco, 419 Mass. 581, 583 (1995). “A single encroachment that creates permanent harm” does not constitute continuing trespass. Id. 232, However, where a single encroachment creates “a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition ... is subject to the *474 liability for . . . the continuing harm.” Id., quoting Restatement (Second) of Torts §834, comment e, at 150-51 (1979).
The facts of this case are substantially similar to other cases where the courts have found that a single encroachment has caused a continuing trespass. See Sixty-Eight Devonshire, Inc. v. Shapiro, 348 Mass. 177, 184 (1964) (neighbor’s broken gutter repeatedly poured water onto plaintiffs building); Wishneweky v. Saugus, 325 Mass. 191, 194 (1950) (repeated flooding from highway onto plaintiff land); Franchi v. Boulger, 12 Mass.App.Ct. 376, 380 (1981) (improper diversion of surface waters onto to plaintiffs land). The plaintiff has established a continuing trespass. Thus the action is not entirely barred by the statute of limitations.
At the same time, the doctrine of continuing trespass only allows “a plaintiff whose claim otherwise would be untimely to sue where its property rights are invaded from time to time because of repeated or recurring wrongs, resulting in new harm to the property on each occasion.” Taygeta, 436 Mass, at 231. When, as here, a condition caused by the defendant creates “intermittent or recurring [trespasses], [the] cause of action in each case is the particular trespass for which [the plaintiff] seeks recovery for damage sustained by reason of that trespass, and each trespass constitutes a new cause of action.” Wishnewsky, 325 Mass, at 194.
Therefore, while Moylan may recover for damages sustained from instances of continuing run-off caused by the paving of the way, she may not recover for any trespasses for which the statute of limitations has already run, or for any costs related to damages caused by the initial paving. Neither may she recover for damages caused by salt and sand thrown onto her property by the work of snowplows, since these trespasses are the result of independent actors. Most of the damage claims put forward by Moylan that are not time-barred or unrelated to the continuing trespass are for costs to repair portions of the timber berm, split-rail fence and plants that Moylan installed on the private way, not on her own property. One claim, for one hundred and seventy-five dollars ($175) on 7/21/99 for grading around her pond area to prevent water washing in to the area, is not barred by the statute of limitations. The cost for this grading is also both related to the continuing trespass of the run-off and was incurred to correct problems on Moylan’s own property. The plaintiff may therefore recover for the cost of that repair.
Finally, the court will deny Moylan’s requests for injunctive relief since her hands are hardly clean in this matter. First, she inexplicably appears to have made no effort to involve herself in any way with the paving of the private way prior to or while paving was actually occurring. Second, she has installed extensive landscaping through portions of the private way that do not belong to her. This fact is especially relevant since part of Moylan’s complaint is that Gordon should have surveyed the property lines before putting down asphalt.

2. Adverse Possession

In her motion for directed verdict Moylan argues, for the first time, that she has obtained title to the private way through adverse possession. Since this issue was not brought to trial, the court need not address it. Even so, Moylan has failed to establish a claim for adverse possession to the private way.
‘Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years.” Lawrence v. Town of Concord, 439 Mass. 416, 421 (2003), quoting Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992). To claim adverse possession “within the bounds of an established way [also requires proof of] occupation of land irreconcilable with its use as a way.” Zora Enterprises v. Burnett, 61 Mass.App.Ct. 341, 347 (2004), quoting Brennan v. DeCosta, 24 Mass.App.Ct. 968, 969 (1987). Activities that do not “impede the rights of others to make us of the way are not irreconcilable with the use as a way.” Id. at 348. Moylan’s planting of trees and shrubs along the edge of the way was not irreconcilable with her neighbor’s use of the way. Further, she has not shown that her use was exclusive, since the evidence showed that other people used the private way for access to their properly. She has not, therefore, established adverse possession over any portion of the way.
3. Prescriptive Easement
The defendant argues that a prescriptive easement exists over the portion of the private way that it paved. This argument is irrelevant for two reasons: first, whether a prescriptive easement existed for Moylan’s neighbors, it did not exist for the defendant, who was on the property for only a few days. See Ivons-Nispel v. Lowe, 347 Mass. 760, 762 (1964) (easement found in favor of one plaintiff does not create easement for general public). Second, whether a prescriptive easement over that portion of the land existed or not, the defendant did not have the right to create a continuing trespass or nuisance over the rest of the plaintiffs property through repeated flooding caused by the defendant having paved the way.

ORDER

For the foregoing reasons, judgment is entered in favor of the plaintiff and the defendant is hereby ORDERED to pay the plaintiff the amount of one hundred and seventy-five dollars ($175).

The court was unable to establish who actually holds title to Atwater Place.

Specifically, Moylan testified to the following costs:
1. 6/16/01, $80.14 & $115 for an arborist to “draw up a plan to repair” the property
2. 6/25/00, $150 to spread topsoil
3. 7/6/00 $46 for fence repair
*475 4. 7/25/00, $86.91 for marble chipping
5. 6/3/00, $122.46 for marble chipping
6. 6/15/00, $150 for aerating the lawn and repairing the fence
7. 6/17/00, $126.35 for topsoil
8. 5/12/00, $280 to repair timber berm
9. 5/29/00, $29.40 to reinforce timber berm
10. 5/31/00, $15.44 for topsoil
11. 4/29/00, $22.77 for topsoil
12. 4/3/00, $87.98 for repair of damage caused by salt and sand
13. 5/5/00, $54 for taking out dead grass, leaves, salt and sand
14. 4/21/00, $33.02 for loam
15. 4/29/00, $115.29 for cedar mulch
16. 4/29/00, $41.90 for fertilizer
17. 10/17/99, $124.95 for grass seed
18. 10/30/99, $68.67 repair of broken fence
19. 11/12/99, $30.03 repair of broken fence
20. 8/21/99 deleted
21. 10/9/99, $60 for lime and winter fertilizer
22. 10/16/99, $158.97 cement blocks to protect stone wall
23. 7/14/99, $58.24 replacement fence
24. 7/21/99, $175 to grade the land around pond to prevent water washing into the area
25. 8/6/99, $106.31 for grass seed and winter fertilizer
26. 7/10/99, $136.31 for grass seed and fertilizer
27. 7/11/99 deleted
28. 7/12/99, $120.75 to remove pipe to pond
29. 12/13/98, $20.96 for an ice chopper
30. 5/29/99, $135.20 replacement shrubs
31. 6/26/99, $83 for sand and salt removal
32. Through 8/00, $6,265 for major work removing asphalt, etc.
33. 4/21/99, $112 to stake property
34. 4/23/99, $36 to stake property