NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1107

STANLEY S. SZAWLOWSKI

vs.

SZAWLOWSKI REALTY, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This action concerns ownership of a farmhouse (Christian Lane house) and certain surrounding areas that have been occupied since 1985 by Stanley E. Szawlowski (Stanley Sr.), his wife, or his children, including the plaintiff, Stanley S. Szawlowski (Stanley Jr.).[1]  The title owner of the property is the defendant, Szawlowski Realty, Inc. (SRI), a close corporation of which Stanley Sr. was an officer and shareholder. Following Stanley Sr.'s death, SRI sought to evict Stanley Jr., and Stanley Jr. brought this action asserting that he had

_____

[1] Because they share a last name, we refer to the members of the Szawlowski family by their first names, followed, where necessary, by a suffix.

acquired ownership of the property by adverse possession.  After a bench trial, a judge of the Land Court found that Stanley Jr. had acquired by adverse possession title to the Christian Lane house and immediate surrounding portions of the land (residential area), but that title in the remainder of the fifteen-acre parcel (remaining area) stayed with SRI.

On appeal, SRI argues that Stanley Jr. failed to establish ownership of the Christian Lane house and residential area by adverse possession; the judge erred in not applying a heightened legal standard; and certain evidence should not have been excluded during trial.  We need not address this last point, because we conclude that the evidence was insufficient to support Stanley Jr.'s claim of title to the Christian Lane house and residential area by adverse possession.  As such, we reverse those portions of the judgment and remand for entry of a new judgment consistent with our decision.  The judgment is otherwise affirmed.

Background.  We summarize the facts as set forth in the judge's findings, supplemented by uncontroverted facts drawn from the exhibits.

1.  Family business and properties.  The Szawlowski family has operated a potato farming business for over a century.  By the 1960s, that family business was run by four Szawlowski

2

brothers -- Frank, Chester, Stanley Sr., and John.  The brothers initially ran the business as a partnership with each having a twenty-five percent interest; however, from 1984 to 2008, the brothers formed five limited liability entities, including SRI, through which they operated the business.  Each brother had a twenty-five percent interest in each of these entities.

The Szawlowski family had an unspoken and unwritten agreement that family members who worked for the business would be provided with housing.  To that end, at some point in time, each of the four brothers and their families lived in one of several apartments on Henry Street in the city of Northampton that were owned by the family.  None of the brothers paid rent.  By 1980, Frank, Chester, and John no longer lived in the Henry Street apartments because each had purchased and moved into his own home.  The family business paid many of the expenses associated with those three brothers' houses.  Stanley Sr. did not own a home.  Instead, he lived with his mother in a house on Main Street in the town of Hatfield (Main Street house) until 1980, when he moved to a Henry Street apartment.  That same year, Stanley Sr. married his wife.  While living in the Henry Street apartment, the couple welcomed two children -- the plaintiff, Stanley Jr., in 1981, and Joseph in 1983.

3

2.  Tobacco Farm.  In 1985, in connection with their business, the brothers purchased land in the town of Whatley, known as the "Tobacco Farm."  The Tobacco Farm included four nonabutting tracts of land totaling over seventy-four acres.  At issue here is tract one, a fifteen-acre tract abutting Christian Lane that contains several structures, including the 3,165 square-foot Christian Lane house, four barns, and various outbuildings.

After the 1985 purchase, the brothers owned the Tobacco Farm as joint tenants with each holding an undivided interest in the property, and they paid the expenses for the property.  At that time, with John's encouragement, Stanley Sr. and his family[2] moved from the Henry Street apartment into the Christian Lane house.  Roughly five years later in 1990, the brothers, including Stanley Sr., formed the defendant corporation, SRI, to "own real estate and manage the same for farming purposes."  The brothers deeded the Tobacco Farm, including the Christian Lane house, to SRI.

After that change in ownership, SRI paid the property taxes, utility bills, and insurance premiums for the Tobacco Farm, including tract one and the Christian Lane house.

_____

[2] We refer to Stanley Sr.'s wife and two children as his family throughout this decision.

4

However, Stanley Sr. and his family continued to make all maintenance and renovation decisions for the Christian Lane house, without consulting the brothers. Stanley Sr. mainly paid for the repairs and renovations but occasionally received financial support from SRI, in a manner similar to the support the other brothers received for their homes.

Stanley Sr. and his family were the only people with keys to the Christian Lane house, and no one entered or used the house without their permission. Along with the Christian Lane house, Stanley Sr. and his family also were the only users of the surrounding yard and certain other structures, namely the house's driveway, a small brick garage, an "icehouse," a dog shed, and a chicken coop (residential area). Beyond the residential area, tract one also included a four-acre cultivated field; eight acres of wooded, swampy, or flooded land; and a pasture (remaining area).

3. <u>1999 meeting and subsequent conduct</u>. In the 1990s, the brothers met daily to discuss the business. At times, other members of the family joined those meetings. During one such meeting in 1999, Frank and Chester suggested that Stanley Sr. move with his family from the Christian Lane house to the Main Street house. Several years earlier, the brothers' mother had deeded the Main Street house to Stanley Sr. while reserving a

life estate for herself, and she had recently moved out of that house, leaving it unoccupied.

At the 1999 meeting, Stanley Sr. angrily refused to move his family to the Main Street house. He insisted that the Christian Lane house was "his" house as compensation for years of unpaid work for the family business and because he had been paying many bills for the property. Despite some of the brothers' demands that Stanley Sr. vacate the Christian Lane house, Stanley Sr. remained there even after their mother's death in 2000, when the Main Street house was no longer subject to the mother's life estate.

In November 2000 and again in June 2006, SRI granted open-end mortgages on the Tobacco Farm, including tract one and the Christian Lane house, to First Pioneer Farm Credit, ACA. Frank signed the mortgages as SRI's president and Stanley Sr. signed them as SRI's treasurer. Both mortgages identified SRI as the borrower. In the mortgages, SRI covenanted that it had "good and marketable title in fee simple to the Mortgaged Premises" and would "defend such title against all claims and demands." SRI also promised that after the date each of the two mortgages was executed, "'none of the following actions shall be taken or permitted without Lender's prior consent,' including '[a]cquisition of legal or equitable title to all or any part of

the Mortgaged Premises by anyone other than those in whom title is vested on the date hereof.'" SRI made all principal and interest payments on both mortgages.

During this time, Stanley Sr. and his family continued to live in the Christian Lane house. In 2002, Joseph graduated from high school and moved out of the house. In 2003, Stanley Sr.'s wife passed away, leaving in the Christian Lane house Stanley Sr. and Stanley Jr., who was then twenty-two years old and working for the family businesses. Stanley Sr., Stanley Jr., and Joseph continued to pay some expenses for the house, as did SRI.

In 2007, Stanley, Sr. moved to the Main Street house, but Stanley Jr. remained in the Christian Lane house. In 2008, Shelley Szawlowski, who is Frank's daughter, took over management of SRI's day-to-day operations. Shelley discussed Stanley Jr.'s occupation of the Christian Lane house with his brother, Joseph, but she failed to convince Stanley Jr. to move out of the house.

In 2012, Stanley Jr.'s girlfriend (whom he later married) moved into the Christian Lane house. The following year, Stanley Jr. stopped working for the family businesses due to work-related injuries, but he remained with his girlfriend at the Christian Lane house. In 2015, John, Frank and Chester,

7

without Stanley Sr. present, discussed Stanley Jr.'s continued occupancy of the Christian Lane house.  During that meeting, John slammed his fist and said, "Nothing's going to happen until [Stanley Sr.] is dead."  In 2020, Stanley Sr. passed away.

4. Litigation and trial.  In October 2021, SRI commenced a summary process proceeding against Stanley Jr. and his wife, to evict them from the Christian Lane house (summary process action).  The following month, Stanley Jr. brought this action in the Land Court, for declaratory and injunctive relief based on a theory that he had acquired title to tract one by adverse possession.  SRI filed counterclaims for slander of title and trespass; the slander of title counterclaim was later dismissed.

Following a three-day trial, including a view of the property, the judge found that from 1985 to 1990, the occupation of the Christian Lane house and residential area was not adverse because Stanley Sr. was a coowner with the right to occupy the property.  The judge further found no adverse use from 1990 to 1999, because even though SRI owned the property, Stanley Sr. and his family had previously lawfully entered the property, no evidence was presented of a disagreement between the brothers during this time concerning that use, and Stanley Sr. did not act contrary to his duties as a shareholder of SRI through his occupancy of the Christian Lane house and the residential area.

8

However, the judge found that following the 1999 meeting, Stanley Sr.'s statement that the Christian Lane house was "his" sufficiently put SRI on notice that the use of the property by Stanley Sr. and his family was adverse and nonpermissive. Relatedly, the judge held as "a question of apparent first impression under Massachusetts law" that a shareholder of a close corporation and his family may acquire the corporation's real property by adverse possession.

Ultimately, the judge held that Stanley Jr. had acquired title to the Christian Lane house and the residential area by adverse possession. The judge also found that the remaining area of tract one was owned by SRI. Judgment entered (1) declaring that Stanley Jr. had acquired title to the Christian Lane house and residential area by adverse possession, (2) enjoining SRI or its agents from entering the Christian Lane house and residential area without Stanley Jr.'s permission, and (3) requiring Stanley Jr. to file a plan with the registry of deeds depicting the boundaries of his property. The judge further declared that Stanley Jr. did not acquire any other land by adverse possession and enjoined Stanley Jr. from entering the remaining area without SRI's permission.

Discussion. "[W]e accept the judge's findings of fact as true unless they are clearly erroneous." Kendall v. Selvaggio,

9

413 Mass. 619, 620 (1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (citation omitted). Id. at 620-621. "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts." Id. at 621. "Thus, the 'clearly erroneous' standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards." Id.

A party claiming title to land through adverse possession has the burden of proving "actual, open, exclusive, and nonpermissive use for a continuous period of twenty years." Totman v. Malloy, 431 Mass. 143, 145 (2000). See Lawrence v. Concord, 439 Mass. 416, 421 (2003). "Whether a use is nonpermissive depends on many circumstances, including the character of the land, who benefited from the use of the land, the way the land was held and maintained, and the nature of the individual relationship between the parties claiming ownership." Totman, supra. "Whether, in a particular case, these elements are sufficiently shown is essentially a question of fact." Kershaw v. Zecchini, 342 Mass. 318, 320 (1961).

In cases where the putative adverse possessor first occupies the property with explicit permission from the true owner, the possessor bears "a heavy burden . . . to show by clear evidence that the use has shifted at some point from permissive to adverse, so as to put the owner on clear notice that [it] should take steps to protect [its] rights." Begg v. Ganson, 34 Mass. App. Ct. 217, 221 (1993). Moreover, "[w]here a special relationship exists[,] the putative adverse possessor is required to give actual notice to the true owner of the change in status from permissive to adverse." Lawrence, 439 Mass. at 424, citing Restatement (First) of Property § 458 comment j (1944) (Restatement). The relationship between a shareholder and officer of a close corporation and the corporation is a "special relationship," such that, at a minimum (though we do not decide the question, see note 8, infra), actual notice is required.[3] See Restatement § 458 comment j ("Where a user of

---

[3] The parties agree that a heightened legal standard applies in the circumstances here, but dispute whether the trial judge properly applied that standard. Although the trial judge cited Lawrence, 439 Mass. at 422, and Begg, 34 Mass. App. Ct. at 221, in his decision, he relied on two cases from other jurisdictions in articulating the applicable standard. Specifically, the judge concluded that officers and directors of a close corporation must give "'express notice' to the corporation that they are acting adversely." See Perivoliotis v. Pierson, 167 Ill. App. 3d 259, 263-264 (1988); Leigh v. Howard, 93 A. 680, 681 (N.J. Sup. Ct. 1915). We think the standards of "clear notice," "actual notice," and "express notice" are sufficiently

land and one having an interest affected by the use have a relationship to each other sufficient in itself to justify the use, the use is not adverse unless knowledge of its adverse character is had by the one whose interest is affected").

On appeal, Stanley Jr. argues that he obtained title to the Christian Lane house and residential area independent of his father based on his use of the property for twenty years as an adult. Where Stanley Jr.'s use of the property was at first permissive, he must show conduct that put SRI on "clear notice" that his use of the property had shifted from permissive to adverse. Begg, 34 Mass. App. Ct. at 221. To satisfy his burden, Stanley Jr. relies on his continued occupancy of the Christian Lane house following his father's statement at the 1999 meeting that the Christian Lane house was "his" (i.e., Stanley Sr.'s) house. Though Stanley Jr. was present at that meeting, he did not articulate a position concerning his use of the property at the meeting, or at any time thereafter until 2008, when he refused Shelley's request to move out. Stanley Jr. contends that his continued occupancy of the Christian Lane house after the 1999 meeting is tantamount to an adoption of

---

similar that we do not find the judge's articulation of the standard to be legal error. However, in our discussion, we rely on Massachusetts case law.

12

Stanley Sr.'s comments to SRI and that this adoption was sufficient to put SRI on notice. We do not agree with Stanley Jr.'s argument that he adopted his father's statements solely through his presence at the meeting and his continued occupancy with his father. Cf. Hunt v. Hunt, 44 Mass. 175, 183 (1841) (son who lived on land and managed farm owned by father did not acquire title from father by adverse possession). We conclude that Stanley Jr. failed to satisfy his "heavy burden" to show that his actions established "clear notice that [SRI] should take steps to protect [its] rights." Begg, supra.

If Stanley Jr. were to instead rely on his father's conduct at the 1999 meeting and thereafter to establish his claim, it would still fail. Stanley Jr. may "satisfy the twenty-year requirement [by tacking] onto [his] own period of use a period during which a predecessor in privity asserted an adverse right to the property."[4] AM Props., LLC v. J&W Summit Ave, LLC, 91 Mass. App. Ct. 150, 154 (2017). Even if we assume arguendo that Stanley Sr.'s refusal to vacate the property satisfied the "actual notice" standard that applied to corporate officers attempting to claim the property of their fiduciary, Stanley

---

[4] We acknowledge Stanley Jr.'s explicit denial that he was "tacking" his claim to his father's. However, given the extensive treatment both parties gave to this issue, we elect to address it.

13

Jr.'s tacking claim fails because of his father's conduct following the 1999 meeting.[5]  See Lawrence, 439 Mass. at 424.

Stanley Sr.'s subsequent conduct -- executing mortgages on the Christian Lane house and residential area wherein he represented that (1) SRI held the "good and marketable title in fee simple" to the property, (2) SRI would defend its title against any claim, and (3) no one other than SRI would take action to acquire title without the lender's consent -- abrogated his 1999 assertion that the property was his.[6]  See Bodman v. Martha's Vineyard Nat'l Bank of Tisbury, 330 Mass. 125, 130-131 (1953) (possessor's execution of trust agreement that assented to bank holding title as trustee was interruption of any adverse holding).  Cf. Moran v. Gala, 66 Mass. App. Ct. 135, 139 (2006) (attorney who represented sellers of neighboring

---

[5] Because we conclude that Stanley Sr.'s execution of the mortgages would have abrogated his claim for adverse possession, we need not reach the question whether his actions at the 1999 meeting were sufficient to provide "actual notice" to SRI that one of its corporate officers was acting adverse to its interests.  See Lawrence, 439 Mass. at 424.

[6] Stanley Jr. argues that the issue of the legal effect of the mortgages was not raised in the trial court and, therefore, is waived.  We disagree.  SRI's statement in its pretrial brief was sufficient to preserve the issue for appeal -- namely, that "Stanley Sr[.] signed notarized mortgage instruments in 2000 and 2006 as treasurer of SRI, explicitly acknowledging SRI ownership of [tract one] and implicitly acknowledging his and [Stanley Jr.]'s permissive use and occupancy of [tract one's] Christian Lane House."

14

property estopped from succeeding on adverse possession claim against purchasers that "'squarely contradict[ed]' the position [that the attorney] took as counsel for and as a representative of the sellers," including in preparing deed and purchase and sale agreement).  Because Stanley Jr. does not point to conduct immediately following the execution of the 2000 and 2006 mortgages establishing notice to SRI of his continued adverse possession of the property, we conclude that Stanley Jr. cannot tack onto any period of adverse possession established by his father.[7]

Conclusion.  So much of the judgment as concerns Stanley Jr.'s ownership by adverse possession of the Christian Lane house and residential area is reversed, the related injunction is vacated, and the case is remanded for entry of a new

---

[7] Stanley Jr. did not appeal from the judgment and makes no argument about the portions concerning the remaining area, so we affirm without further discussion.

15

declaratory judgment on that issue consistent with our decision. The judgment is otherwise affirmed.[8]

So ordered.

By the Court (Desmond,
Smyth & Tan, JJ.[9]),

*Paul Little*

Clerk

Entered:   September 5, 2025.

---

[8] In so holding, we need not decide the question whether a shareholder and officer of a close corporation is foreclosed from acquiring a corporation's property by adverse possession as a matter of law.  Here, and considering the relationships of the parties claiming ownership in determining whether the use was adverse or permissive, see Totman, 431 Mass. at 145, we conclude that neither Stanley Jr.'s nor Stanley Sr.'s use was adverse for the requisite period.

[9] The panelists are listed in order of seniority.