SEA PINES CONDOMINIUM III ASSOCIATION & others[1] *vs.*
ESTHER L. STEFFENS; JOHN A. MOSTYN, trustee,[2] intervener.

No. 03-P-666.

Barnstable. June 4, 2004. - September 13, 2004.

Present: LAURENCE, DREBEN, & GREEN, JJ.

*Condominiums,* Common area, Derivative suit, Management. *Practice, Civil,*
Standing. *Adverse Possession and Prescription. Real Property,* Adverse
possession.

An unincorporated association of condominium unit owners of a particular
condominium project was a proper plaintiff in an adverse possession action
concerning land adjacent to the condominium's common areas, where
G. L. c. 183A, § 10(*b*)(4), specifically empowered such associations to
conduct litigation as to any course of action involving the condominium's
common areas, where the action arose out of the association's maintenance
of the common areas, and where ignoring the association's status in a
controversy arising from the impacts on adjacent land of its operation of
the condominium would frustrate the purpose of the statutory provision
recognizing the organization of unit owners as the proper entity to
administer matters of common concern to unit owners [842-844]; further,
the association was not required by G. L. c. 183A, § 5(*b*)(2)(iii), to obtain
the consent of unit owners and mortgagees before bringing suit, because
litigation would only be used to confirm the effect of the association's
historic use of the claimed land, rather than to acquire the land [844-845].

In an adverse possession action brought by an unincorporated condominium
association, later-added plaintiffs consisting of individual owners of
condominium units appeared as authorized representatives of the associa-
tion at the time they filed their notice of appeal from the dismissal of the
action and, under the circumstances, should be afforded an opportunity to
seek to amend the complaint to proceed derivatively, regardless of the as-
sociation's board of managers' failure to act following the judgment of
dismissal. [845-846]

This court vacated a judgment dismissing in its entirety a complaint in an
adverse possession action brought by an unincorporated condominium as-
sociation, where the judge's memorandum of decision reserved determina-

---

[1] Frank P. Fiorentino, Mary A. Fiorentino, Richard B. Parad, and Judith A.
Estroff.

[2] Of Lot 106-2, Dune Road Realty Trust.

tion of the parties' rights in a certain area of land, and where the determination whether the degree of maintenance that the condominium association performed on another area of land was sufficient to constitute cultivation, or otherwise to support a claim of adverse possession, turned on questions of fact not adequately developed in the summary judgment record. [846-849]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1999.

The case was heard by *Richard F. Connon*, J., on a motion for summary judgment.

*Peter S. Farber* for the plaintiffs.

*David L. Klebanoff* for the intervener.

GREEN, J. At the center of this appeal is a claim of title by adverse possession, resting on landscaping activities performed on behalf of a condominium association on land adjacent to the condominium common areas. Resolution of the claim requires us first to resolve the parties' dispute over who may assert it.

*Factual background.* We summarize the facts bearing on the underlying adverse possession claim, viewing the summary judgment record in the light most favorable to the plaintiffs. Sea Pines Condominium III (condominium) is one of four related condominium projects developed on land in Brewster. The condominium was created by a master deed under G. L. c. 183A, § 8, recorded in 1977. The Sea Pines Condominium III Association (association), an unincorporated association, is the organization of unit owners for the condominium, established as described in G. L. c. 183A, §§ 8(*i*) and 10. A single entity, known as the Facilities Management Board (FMB), oversees management and maintenance of all four Sea Pines condominium projects, on behalf of the four condominium associations. The landscaping activities on which the plaintiffs' claim rests were performed by contractors under contract with FMB.

The defendant-intervener, John Mostyn, trustee of Lot 106-2, Dune Road Realty Trust (Mostyn), owns land adjacent to the

condominium, to the west.[3] Both the condominium and the
Mostyn land abut Cape Cod Bay. Incident to the initial develop-
ment of the condominium, the developer cleared a portion of
Mostyn's land. The developer also installed landscaping ties
between the cleared area and the water, to stabilize the bank.
Landscaping contractors, under contract with FMB, have since
1978 conducted various maintenance activities on the previ-
ously cleared land. A portion of the land has been maintained as
lawn. The remaining cleared land was planted with a few shrubs,
and over time indigenous brush grew back. However, both
shrubs and brush were trimmed back twice each year to ap-
proximately waist height, to prevent them from growing to a
height that would block views of the ocean from the condo-
minium units nearest Mostyn's land. At the time of the
plaintiffs' complaint, both the lawn area and the trimmed brush
area appeared strikingly different from the surrounding
overgrown wild land.[4]

*Procedural background.* The action commenced with a
complaint filed on July 30, 1999, by five individual condo-
minium unit owners, purporting to act in a derivative capacity
on behalf of all unit owners in the condominium.[5] The complaint
named a predecessor owner of the property as the defendant;
Mostyn intervened based on his interest as purchaser under a
purchase and sale agreement. Thereafter, Mostyn moved for
judgment on the pleadings, claiming, inter alia, that the
plaintiffs' failure to join the association as an indispensable
party defendant required dismissal of the complaint. In response
the original plaintiffs moved to amend the complaint by
substituting the association as the plaintiff. Over Mostyn's

[3]Mostyn's interest in the property is of relatively recent vintage; he moved
to intervene in the action on October 18, 1999, asserting that he held an inter-
est as purchaser under a purchase and sale agreement.

[4]Mostyn's counsel suggested at oral argument that Mostyn has since
constructed a residence on his property.

[5]In their complaint, the individual unit owners asserted that they had made
demand, unsuccessfully, on FMB that it bring an action on behalf of the
condominium association. The complaint contained no indication that the
individuals had made such a demand on the association itself. As will be seen,
the original plaintiffs were replaced by the association in an amended
complaint, so we need not consider the sufficiency of their demand on FMB
to support a derivative action.

objection, the motion was allowed; the amended complaint named no other plaintiffs. Mostyn's first motion for summary judgment was denied, on the basis that "there exists a genuine issue of material fact."

Prior to trial (apparently to meet Mostyn's most recent motion to dismiss[6]), the association moved to add certain individual unit owners as parties plaintiff, as representatives of the unit owners in the condominium. See Mass.R.Civ.P. 23.2, 365 Mass. 769 (1974). Mostyn's motion to dismiss the association was denied. At a subsequent status conference, after the individual plaintiffs furnished a vote of the association's board of managers specifically authorizing them to pursue the litigation on behalf of the association, the individual unit owners' motion to be added to the amended complaint as representatives of the association was allowed by agreement.[7] Mostyn next filed a supplemental motion for summary judgment, in which he argued that only the association's board of managers may maintain an action on its behalf, and that the association's authority to maintain the suit depended on approval of the unit owners and their mortgagees under G. L. c. 183A, § 5.

A second motion judge heard the matter. His memorandum and order, in effect, allowed Mostyn's motion for summary judgment in part. The judge's memorandum did not address Mostyn's latest arguments directed to the plaintiffs' standing, but concluded that the summary judgment record was inadequate to support the plaintiffs' claim of title to the trimmed brush area. Though the judge's memorandum of decision specifically reserved determination of the parties' rights in the lawn area, a judgment entered dismissing the complaint in its entirety.[8]

The individual plaintiffs timely filed a notice of appeal, as

---

[6]The record on appeal does not include the motion to dismiss, and so does not establish the grounds it asserted. The parties' references to the motion suggest that it was based on the argument that, as an unincorporated association, the association lacked capacity to be a party to suit.

[7]The association remained as a party plaintiff.

[8]Even if the decision on summary judgment had determined the rights in the lawn area adversely to the plaintiffs, the judgment on the plaintiffs' complaint for a declaratory judgment should have declared the rights of the parties rather than dismissing the complaint. See *Cardwell* v. *Board of Appeals of Woburn*, 61 Mass. App. Ct. 118, 123 (2004).

representative members of the association; the association filed
no separate notice of appeal. After the individual plaintiffs' ap-
peal entered on our docket, Mostyn moved to dismiss it, citing
a vote of the association's "trustees"[9] to direct that no further
action be taken on its behalf in the case, including in any appeal.

*Proper plaintiff.* "As a general rule, unincorporated associa-
tions lack the capacity to sue and be sued, see *Save the Bay,
Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 675 (1975),
but G. L. c. 183A, § 10(*b*)(4), creates an exception for
condominium associations." *Belson* v. *Thayer & Assocs.*, 32
Mass. App. Ct. 256, 256 n.1 (1992).[10] Section 10(*b*)(4), as
inserted by St. 1963, c. 493, § 1, specifically empowers the
organization of unit owners (whether corporation, trust, or
unincorporated association) "[t]o conduct litigation and to be
subject to suit as to any course of action involving the common
areas and facilities or arising out of the enforcement of the by-
laws, administrative rules or restrictions in the master deed."
The authority to litigate matters concerning the condominium
common areas in fact resides exclusively in the condominium
unit owners organization. See *Cigal* v. *Leader Dev. Corp.*, 408

---

[9]The record does not include the documents establishing the condominium
or the association; we accordingly are unable to reconcile the vote of the as-
sociation's "trustees" with Mostyn's suggestion that the association may act
only by its board of managers. The association's earlier vote, authorizing the
individual plaintiffs to act as its representatives, reflected action by the board
of managers.

[10]Actions involving an unincorporated association of condominium unit
owners often name the association's board of managers as an additional party.
See, e.g., *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683
(1986) (association and board members as defendants); *39 Joy St. Condo-
minium Assn.* v. *Board of Appeal of Boston*, 426 Mass. 485 (1998) (associa-
tion and board members as plaintiffs). However, as *Belson* v. *Thayer & Assocs.*,
*supra*, recognized, under the condominium statute joinder of the individual
managers is not required. See *Commercial Wharf E. Condominium Assn.* v.
*Waterfront Parking Corp.*, 407 Mass. 123 (1990), *S.C.*, 412 Mass. 309 (1992)
(action maintained by unincorporated condominium association alone, without
adverse comment); *Gamere* v. *236 Commonwealth Ave. Condominium Assn.*,
19 Mass. App. Ct. 359 (1985) (unincorporated condominium association, but
not board members, as defendant). Similarly, though a trust (other than a
condominium trust) ordinarily appears as a party in an action through its
trustees, a condominium trust may bring an action in its own name. See, e.g.,
*Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480
(1988), *S.C.*, 416 Mass. 505 (1993).

Mass. 212, 217-218 (1990); *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442, 445 (1994).

There is some question whether the present case may properly be considered to concern the condominium common areas, since the parties appear to agree that the land claimed under the plaintiffs' complaint has not been submitted to the provisions of G. L. c. 183A by a master deed or any amendment thereto.[11] We are aware of no other appellate case in Massachusetts (or, for that matter, in any other State) involving a claim of adverse possession by a condominium association or trust to land beyond the boundaries of the land submitted to the condominium form of ownership under its master deed.[12] Mostyn presses two related arguments regarding the lack of statutory authority for the association to maintain this action. First, Mostyn observes that the association's authority under G. L. c. 183A, § 10(*b*)(4), to conduct litigation is limited to "any course of action involving the common areas"; since the claimed land is not now part of the common areas, Mostyn reasons, the authority to conduct litigation claiming the land is beyond the power conferred by the statute. Second, Mostyn points to the requirement, under G. L. c. 183A, § 5(*b*)(2)(iii), as amended by St. 1998, c. 242, § 5, for the consent of at least seventy-five per cent of condominium unit owners and fifty-one per cent of their first mortgagees to any addition of land to the condominium.[13]

In our view, neither statutory provision bars this action. The landscaping activities on which the plaintiffs' claim of title rests all occurred incident to the association's discharge of its role in maintaining the common areas of the condominium. In that respect, we consider the claim to arise out of a "course of ac-

---

[11]See note 9, *supra*.

[12]Two Massachusetts trial court decisions involve claims of adverse possession by a condominium trust: Yeatman *vs.* Stoneland Realty, Inc., Worcester Superior Court, No. 99-CV-0126B (Feb. 7, 2001), and Beckman *vs.* Bard, Land Court, Misc. No. 264623 (May 17, 2001). In *Yeatman*, the land subject to the dispute was part of the land submitted to the condominium form of ownership under the master deed. In *Beckman*, the possibility of an adverse possession claim was expressly anticipated under the master deed, which provided for addition of the land to the common areas upon conclusion of a successful claim.

[13]The plaintiffs do not contend they have obtained such consent, but argue that it is not necessary as a prerequisite to this suit.

tion involving the common areas," viz., the association's maintenance of the common areas. It would be anomalous indeed to recognize an unincorporated condominium association as a proper party with capacity to sue in the manner contemplated by the condominium statute in disputes arising from its activities on the common areas, but to ignore its status as a condominium association in a controversy arising from the impacts on adjacent land of its operation of the condominium.[14] Such a view would frustrate the purpose of the provisions of c. 183A establishing and recognizing the organization of unit owners, in whatever form created, as the proper entity to administer matters of common concern to the condominium unit owners.[15]

We are likewise unpersuaded by Mostyn's contention that the association was required by G. L. c. 183A, § 5(*b*)(2)(iii), to obtain the consent of unit owners and mortgagees before bringing suit on a claim of adverse possession. If the association has acquired the claimed portion of Mostyn's land by adverse possession, it has done so by means of its long-continued use of

---

[14]We harbor no doubt that the association (and not its constituent unit owners) would have been the proper party defendant in an action seeking damages for trespass, or in one seeking a writ of entry under G. L. c. 237, had Mostyn or his predecessors sought a remedy for the unauthorized entry onto his land. An action seeking a declaration of title by adverse possession simply effectuates the statute of limitations applicable to an action for recovery of land under G. L. c. 260, § 21. See *Lawrence* v. *Concord*, 439 Mass. 416, 423 (2003), quoting from *Humbert* v. *Rector, Churchwardens & Vestrymen of Trinity Church in the City of N.Y.*, 24 Wend. 587, 604 (N.Y. 1840) ("It is of the nature of the statute of limitations when applied to civil actions, in effect, to mature a wrong into a right, by cutting off the remedy").

[15]Mostyn separately urges that the association may not maintain this action for adverse possession, because it did not directly contract for the activities supporting the claim; instead the landscaping and trimming activities were performed by third parties under contract with FMB, pursuant to its joint management arrangement with all four Sea Pines condominium associations. The argument is without merit. It is of no consequence that the services were performed by third parties in contractual privity with the association rather than directly by the association itself. That the contractual arrangement was for the joint benefit of all four associations does not impair the right of any one of them to assert a claim deriving from the performance of such services on its behalf; in any event, it appears sensible to recognize as particular to the plaintiff association (rather than the other Sea Pines associations) any rights of adverse possession arising from landscaping activities which encroached onto adjacent lands beyond the boundaries of its particular common areas.

the land, rather than by the present litigation; the complaint for declaratory judgment seeks merely to confirm the effect of that historic use, by operation of law. In that respect, the situation is analogous to an action seeking determination of title to littoral land following accretion. See, e.g., *Lorusso* v. *Acapesket Improvement Assn.*, 408 Mass. 772, 780-782 (1990).[16] Though c. 183A does not specifically address the present circumstances, we see no reason to construe it in the narrow manner Mostyn urges, particularly where the unit owners have acquiesced in the association's maintenance activities on the disputed land and have paid their proportionate shares of the cost of such maintenance as incurred, and confirmation of the title thus acquired (if the claim is successful) would inure to the benefit of the association as a whole. Moreover, Mostyn's argument, pressed to its limits, would preclude a condominium association from raising a valid statute of limitations defense in an action naming it as defendant in an action for recovery of land, unless it first obtained the consent of its unit owners and their mortgagees. See note 13, *supra.*

It remains to consider the status of the individual unit owners as representatives of the association. Though Mostyn now argues that only the board of managers has the capacity to represent the association in litigation, we consider him to have waived that argument when he agreed to the association's motion to add the individual unit owners as plaintiffs, in a representative capacity under Mass.R.Civ.P. 23.2, after previously insisting that the association was without legal capacity to maintain the action as a party in its own right.[17] Accordingly, we consider

---

[16]We acknowledge that acquisition of land by accretion differs from acquisition by adverse possession in that the former results from natural forces while the latter requires affirmative acts by the acquiring party. Nonetheless, both differ from acquisition by purchase or other express grant in that they result from the operation of law on already concluded events.

[17]Since this matter concerns the common areas of the condominium, the association was in fact the proper party to bring suit in the first place. See G. L. c. 183A, § 10(*b*)(4). Because of the standing conferred on the association by § 10(*b*)(4), it ordinarily would have been inappropriate for the individual owners to bring suit pursuant to rule 23.2; that rule is directed to unincorporated associations that lack the legal capacity to maintain suit in their own name. When a condominium association holds the capacity to bring

the representative unit owners' notice of appeal effective to perfect their right to maintain the present appeal.

We also decline Mostyn's request that we dismiss the appeal based on the apparent decision by the association "trustees" to abandon further action in the case, following the judgment of dismissal. The association's board of managers filed no notice withdrawing the notice of appeal filed by the unit owner representatives, or revoking the authority of the individuals it previously authorized to represent it. Accordingly, the individual plaintiffs still appeared in the action as authorized representatives of the association at the time they filed their notice of appeal and continuing through the entry of the appeal on our docket. Even if the board of managers were to file a dismissal of the action on behalf of the association, or a revocation of the unit owners' authority to represent the association, in the present circumstances we believe it appropriate to furnish the interested unit owners an opportunity to seek to amend the complaint to proceed derivatively before dismissing the action. See *Cigal* v. *Leader Dev. Corp.*, 408 Mass. at 218 n.10.[18]

*Adverse possession.* Though the motion judge specifically declined to rule on so much of the plaintiffs' claim as relates to the lawn area, the judgment dismissed the complaint in its entirety. If for no other reason, that circumstance requires the judgment to be vacated. Furthermore, though the judge's allowance of summary judgment as to the trimmed brush area may

---

suit under the condominium statute, individual unit owners typically may appear as parties only in a derivative capacity under Mass.R.Civ.P. 23.1, 365 Mass. 768 (1974). See *Cigal* v. *Leader Dev. Corp.*, 408 Mass. at 217-218 & n.10; *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. at 445. In the circumstances of the present case, however, where the individual plaintiffs intervened in a representative capacity with the defendant's consent, and in response to the defendant's erroneous contention that the association was without capacity to maintain the action itself, we are not inclined to entertain the defendant's argument that the individual plaintiffs are without capacity to represent the association.

[18]We express no view on whether the individual unit owner plaintiffs might satisfy the requirements to proceed in a derivative capacity, but consider the question more suitable for consideration in proceedings following remand, on a more fully developed record. See *Cote* v. *Levine*, 52 Mass. App. Ct. 435, 439-442 (2001), for a discussion of the requirements for individual condominium unit owners seeking to maintain a derivative action on behalf of the organization of unit owners.

consequently be considered interlocutory in nature, in the interest of judicial economy and because the parties have fully briefed the issue we shall discuss it. Compare *Tinkham* v. *Jenny Craig, Inc.*, 45 Mass. App. Ct. 567, 574 n.9 (1998).

"Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." *Lawrence* v. *Concord*, 439 Mass. 416, 421 (2003), quoting from *Kendall* v. *Selvaggio*, 413 Mass. 619, 621-622 (1992). See G. L. c. 260, § 21. "Acts of possession which are 'few, intermittent and equivocal' [are insufficient to] constitute adverse possession." *Kendall* v. *Selvaggio*, *supra* at 624, quoting from *Parker* v. *Parker*, 1 Allen 245, 247 (1861). The burden of proof in any adverse possession case rests on the claimant and extends to all of the necessary elements of such possession. See *Holmes* v. *Johnson*, 324 Mass. 450, 453 (1949). If any of the elements remains unproven or left in doubt, the claimant cannot prevail. See *Mendonca* v. *Cities Serv. Oil Co.*, 354 Mass. 323, 326 (1968). See also *Tinker* v. *Bessel*, 213 Mass. 74, 76 (1912), quoting from *Cook* v. *Babcock*, 11 Cush. 206, 210 (1853) ("The acts of the wrongdoer are to be construed strictly and 'the true owner is not to be barred of his right except upon clear proof' ").

The acts constituting adverse possession must be inconsistent with the owner's rights; otherwise, they would not place the owner on notice of the competing claim of right. See *Ottavia* v. *Savarese*, 338 Mass. 330, 334 (1959). "The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put." *LaChance* v. *First Natl. Bank & Trust Co.*, 301 Mass. 488, 490 (1938). To succeed, the claimant must establish changes upon the land that constitute "such a control and dominion over the premises as to be readily considered acts similar to those which are usually and ordinarily associated with ownership." *Peck* v. *Bigelow*, 34 Mass. App. Ct. 551, 556 (1993), quoting from *LaChance* v. *First Natl. Bank & Trust Co.*, *supra* at 491. See, e.g., *Lyon* v. *Parkinson*, 330 Mass. 374, 380 (1953) (adverse possession established where claimant cleared land, formed rock garden, and installed rip-rap); *Collins* v. *Cabral*, 348 Mass.

797, 798 (1965) (adverse possession established where claimants maintained disputed lawn area, cleared land of poison ivy, filled and graded property, and installed septic system); *Shaw* v. *Solari*, 8 Mass. App. Ct. 151, 153 (1979) (adverse possession established where claimant erected chicken coop, built picket fence, and maintained driveway). The claimant's acts of dominion and control must be sufficiently open and notorious to constitute "notice to all the world . . . of an adverse claim of title." *Phipps* v. *Crowell*, 224 Mass. 342, 343 (1916).

While the owner's actual knowledge of such use is not required, the use must be such that the owner should have known of it. See *Foot* v. *Bauman*, 333 Mass. 214, 218 (1955); *Lawrence* v. *Concord*, 439 Mass. at 421-422. "The guiding principle behind the elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of property rights." *Totman* v. *Malloy*, 431 Mass. 143, 145 (2000).

In cases involving a claim of adverse possession to wild or woodlands, the claimant generally must establish that the land has been enclosed or reduced to cultivation. *Senn* v. *Western Mass. Elec. Co.*, 18 Mass. App. Ct. 992, 993 (1984). See *Dow* v. *Dow*, 243 Mass. 587, 593 (1923). The strict rule applicable to wild or woodlands is, however, but an application of the general rule to the circumstances presented by wild or uncultivated lands. That is to say, the nature of the occupancy and use must be such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of right; in the circumstances of wild and unimproved land, a more pronounced occupation is needed to achieve that purpose. Accordingly, even the clearing of the land of all trees, on a single occasion, is inadequately continuous to satisfy the requirements for adverse possession. See *Slater* v. *Jepherson*, 6 Cush. 129, 131-132 (1850). Nonetheless, the determination whether a set of activities is sufficient to support a claim of adverse possession is inherently fact-specific. See *LaChance* v. *First Natl. Bank & Trust Co.*, 301 Mass. at 490 ("Evidence insufficient to establish possession of a tract of vacant land in the country might be adequate proof of such possession of a lot

in the center of a large city"); *Kershaw* v. *Zecchini*, 342 Mass. 318, 320 (1961).

Mostyn contends (and the motion judge agreed) that the plaintiffs' claim to the trimmed brush area must be dismissed under the rule applicable to wild lands, because indigenous brush grew back after it was cleared incident to the initial development of the condominium. However, though the brush grew back, the association trimmed it on a regular and continuous basis to a degree that presented a visible and readily apparent line of demarcation alongside the adjacent uncultivated areas. That the revegetation of the area consisted of indigenous growth does not itself determine that the area was wild and uncultivated. Whether the degree of maintenance performed on the trimmed brush area was sufficient to constitute "cultivation," or otherwise to support a claim of adverse possession, turns on questions of fact not adequately developed in the summary judgment record. We accordingly conclude that the motion judge should not have ordered summary judgment for the defendant as to that portion of the plaintiffs' claim.

*Conclusion.* The judgment of dismissal is vacated and the matter is remanded for further proceedings consistent with this opinion. On remand, the individual plaintiffs shall be required to establish that they continue to hold the authority of the association to act as its representatives in this action. If they do not, they shall be given an opportunity to seek to be substituted as plaintiffs in a derivative capacity; if they are unable to establish their authority as representatives of the association, or alternatively to meet the requirements to proceed in a derivative capacity, the action shall be dismissed.

*So ordered.*