STEVENS vs. IRVING, MISC 18-000444

































 
 LORRAINE STEVENS, TRUSTEE OF THE LORRAINE STEVENS TRUST, Plaintiff, v. MICHAEL J. IRVING and ANN IRVING, Defendants
 MISC 18-000444 
 OCTOBER 6, 2021
ESSEX, ss.
SPEICHER, J.
DECISION














 Determining record title to property in the historic Old Town district of Marblehead can be difficult, and in the present case, neither party could overcome a title challenge to prove who owns the disputed land between their houses. In this unusual adverse possession case, neither party has asserted a claim for quiet title or similar claim to prove, nor have they proven, record title ownership of the disputed area between their two properties. As a result, upon the failure of the plaintiff to prove her case of adverse possession of the disputed area, there is no way for the court to determine who owns the disputed area as a matter of record title. This is what has actually come to pass; while I have determined, after trial, that the plaintiff has failed to prove her claim of adverse possession, the court cannot conclude that the defendants own the disputed area free and clear of claims of the plaintiff, but only that the plaintiff has failed to prove that she owns the disputed area by adverse possession or acquisition of a prescriptive easement. 





 I conducted a view of the two subject properties on July 12, 2021, and the case was tried before me on July 13, 2021. Following the submission of post-trial briefs and requests for findings of fact and rulings of law, I took the case under advisement on September 27, 2021. 





 Based on the findings of fact and rulings of law below, I find and rule that the plaintiff Lorraine Stevens, Trustee of the Lorraine Stevens Trust, has failed to prove her claims of adverse possession or easement by prescription. 





FACTS





 Based on the facts stipulated by the parties, the documentary and testimonial evidence admitted at trial, my view of the subject properties, and my assessment as the trier of fact of the credibility, weight and inferences reasonably to be drawn from the evidence admitted at trial, I make the following factual findings:





1. The plaintiff and the defendants own adjacent properties in the densely developed Old Town section of Marblehead. Both properties are located on Washington Street across from Abbott Hall, the historic Marblehead town hall. 





2. The plaintiff's property at 197 Washington Street has been in her family for many years. In 1951, Joel B. Stevens conveyed the property in an intra-family transfer to John G. Stevens. [Note 1] After the death of John G. Stevens and intervening transfers involving his estate, the property was conveyed in 1990 by his son, John G. Stevens II, to John G. Stevens and Lorraine M. Stevens, husband and wife as tenants by the entirety. [Note 2] On July 21, 2006, Lorraine Stevens, following the death of her husband in 2003, deeded the property to herself as trustee of the Lorraine Stevens Trust. [Note 3] 





3. All three of the above-referenced deeds contain identical metes and bounds descriptions of the property, including, "Southwesterly by Washington Street, 59 feet; ... Northeasterly by land now or formerly of Chamberlain, 159 feet." [Note 4] This latter description, "northeasterly by land now or formerly of Chamberlain", is the purported boundary with the defendants' property at 195 Washington Street. 





4. The property at 195 Washington Street was owned by the Gilman family for decades until it was sold to defendants Michael J. Irving and Ann Irving (the "Irvings") in 2015. In 1991, Ruth Gilman conveyed the property into a trust. [Note 5] On October 12, 2005, the trustee of the Gilman Trust deeded the property to Ruth Gilman's daughter, Meredith S. Clisby, for nominal consideration. [Note 6] 





5. Following an intervening conveyance by Meredith Clisby to herself and her husband, the Clisbys conveyed the property at 195 Washington Street to the Irvings on August 25, 2015. [Note 7] 





6. The deed into the Irvings, like the previous deed into the Gilman Trust, contained a metes and bounds description of the property that included bounds, but no "metes," or measure It described the property as being bounded "Southeasterly by Washington Street" with no measure of the number of feet by which it was so bounded. Similarly, for the boundary with the plaintiff's property, it described the property as being bounded, "Northeasterly by land formerly of Buchanan and now of Stevens." As with the other parts of the metes and bounds description, it included no "metes": the measure of the number of feet by which it bordered the Stevens land was not given. [Note 8]





7. To compound the vagueness created by the lack of a description of the number of feet by which the Irving property is bounded by other properties, the described "northeasterly" bounding by the Stevens land is incorrect, as the Stevens land lies westerly and northwesterly of 195 Washington Street, and most certainly is NOT "[n]ortheasterly" of the Irving property. 





8. As a result of the indeterminate property description in the record title for 195 Washington Street, in connection with the sale to the Irvings, Meredith Clisby paid for a survey to be completed and to be recorded with the deed to the Irvings. [Note 9]





9. The resulting survey is entitled, "Plan of Land Michael Irving 195 Washington Street" prepared by Control Point Associates, Inc., dated August 16, 2015 (the "Control Point Plan"). The Control Point Plan described the westerly or northwesterly boundary of the Irving property at 195 Washington Street with the Stevens property by reference to an 1812 deed described as follows: "Bk. 197 Pg. 211 Deed line to Grant Access to Brick Layer." The boundary with the Stevens property is shown in three courses totaling 156.32 feet in length. [Note 10] 





10. The deed from Clisby to the Irvings, in addition to the metes and bounds description (which is devoid of any measure of the length of the bounding property lines), states that the land conveyed in the deed is "[a]lso shown as a lot of land on (the Control Point Plan), to be recorded in Essex South District Registry of Deeds." [Note 11] The Control Point Plan was recorded nearly a year after the sale from Clisby to the Irvings. [Note 12] 





11. Prior to alteration by the Irvings sometime in or after 2015, the area immediately adjacent to the dwelling on the Irving property, on the side facing the Stevens property, was occupied by a brick walkway leading from the street to the rear of the property; at the front of the walkway were two granite steps leading down to the sidewalk. The walkway was bounded by a concrete curb. On top of the curb was a picket fence less than three feet in height. [Note 13] The fence was placed in its location on top of the curb by the Gilmans prior to 1981. [Note 14]





12. Adjacent to the two granite steps were two additional steps, one concrete and one granite, leading up to the driveway adjacent to the concrete curb and the picket fence. The area between the concrete curb with the picket fence along its top, and the Stevens dwelling, is entirely paved. The paving dates to the late 1970s and was installed by the current owner Lorraine Stevens' late husband. [Note 15] The driveway was used by tenants of the Stevens who occupied the three apartments at 197 Washington Street. [Note 16] Although paved, there was no specific testimony that the portion of paved area above, or northwesterly of the concrete and granite steps was used for parking; access to that part of the driveway would have required some maneuvering, as the curb cut for the driveway did not extend even as far as the steps. Thus, pulling onto the paved area to the right of the curb cut and above the steps is not a simple maneuver, and if there were already one or two cars in the driveway directly above the curb cut, access 

 to the right side of the paved area would have been difficult and perhaps impossible. Tellingly, neither Ms. Stevens nor her son Mark Stevens testified as to any specific use of this disputed part of the paved driveway by their tenants; they only testified that their tenants parked on the driveway. Accordingly, I find that this disputed part of the paved area was used for parking by the Stevens or their tenants on no more than an intermittent basis at best. 





13. The two steps on the right side, facing the two properties from the street, were used by the Gilmans and Clisbys to access their property. The two steps on the left side facing the two properties were used to access the Stevens property, [Note 17] but there was no testimony that I credit with respect to how often or as to whether such access was on anything other than an intermittent basis. 





14. After their purchase of the property at 195 Washington Street, the Irvings relocated the fence on top of the curb several feet to the northwest, or to the left when facing the two properties from the street. The distance between the curb and the relocated placement of the fence was slightly over four feet at the street line, and slightly over three feet at the rear of the building on 195 Washington Street. [Note 18] This area between the curb and the location to which the fence was relocated comprises the disputed area over which the plaintiff claims adverse possession or a prescriptive easement. 





15. Subsequent to the relocation of the fence by the Irvings, the granite and concrete steps to the street and the picket fence were all removed in conjunction with the installation of a gas line to the Irving property. [Note 19] 





DISCUSSION 





 "Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive, and adverse for twenty years." Ryan v. Stavros, 348 Mass. 251 , 262 (1964). The "necessary elements of such possession [include] the obligation to show that it was actual, open, continuous, and under a claim of right or title." Mendonca v. Cities Service Oil Co. of Pa., 354 Mass. 323 , 326 (1968). The burden of proving each element falls upon the party claiming title by adverse possession. Lawrence v. Town of Concord, 439 Mass. 416 , 421 (2003). "The acts of the wrongdoer are to be construed strictly and 'the true owner is not to be barred of his right except upon clear proof.'" Tinker v. Bessel, 213 Mass. 74 , 76 (1912), quoting Cook v. Babcock, 65 Mass. 206 (1853). "If any of the elements remains unproven or left in doubt, the claimant cannot prevail." Sea Pines Condominium III Ass'n v. Steffens, 61 Mass. App. Ct. 838 , 847 (2004). 





 "An adverse possession claim requires that possession be 'actual' in nature, meaning that the possessor must be actually utilizing the land that he or she is claiming." Chew v. Kwiatkowski, 19 LCR 88 ,91 (Mass. Land Ct. 2011) (Trombly, J.). To prove actual use, the plaintiff "must establish changes upon the land that constitute 'such control and dominion over the premises as to be readily considered acts similar to those which are usually and ordinarily associated with ownership.'" Id. 





 In looking to the extent of the claimant's acts upon the land, this showing of dominion and control is closely linked to the requirement that the use be likewise open and notorious. An open use is one undertaken without attempted concealment; to be notorious, "it must be sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property." Boothroyd v. Bogartz, 68 Mass. App. Ct. 40 , 44 (2007). "The purpose of the requirement of 'open and notorious' use is to place the true owner 'on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action.'" Lawrence v. Town of Concord, supra, 439 Mass. at 421, quoting Ottavia v. Savarese, 338 Mass. 330 , 333-334 (1959). "The nature of the occupancy and use must be such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of rights[.]" Sea Pines Condo. III Ass'n v. Steffens, supra, 61 Mass. App. Ct. at 848. Acts under a claim of right are those undertaken "with an intention to appropriate and hold the same as owner, and to the exclusion, rightfully or wrongfully, of everyone else." Lawrence v. Town of Concord, supra, 439 Mass. at 421 n.5, quoting Bond v. O'Gara, 177 Mass. 139 , 144 (1900). 





 The particular acts that would be consistent with ownership, as well as those sufficient to provide notice to the true owner, will vary depending on the features of the land in question, and the court must therefore consider the conjunction of "the nature of the occupancy in relation to the character of the land." Kendall v. Selvaggio, 413 Mass. 619 , 623-624 (1992). "Evidence insufficient to establish exclusive possession of a tract of vacant land in the country might be adequate proof of such possession of a lot in the center of a large city." LaChance v. First Nat'l Bank & Trust Co., 301 Mass. 488 , 490 (1938). "Acts of possession which are 'few, intermittent and equivocal' do not constitute adverse possession." Kendall v. Selvaggio, supra, 413 Mass. at 624, quoting Parker v. Parker, 83 Mass. 245 , 247 (1861). "[T]he determination whether a set of activities is sufficient to support a claim of adverse possession is inherently fact-specific." Sea Pines Condominium III Ass'n v. Steffens, supra, 61 Mass. App. 

Ct. at 848. 





 The plaintiff also seeks, as an alternative remedy, to establish an easement by prescription over the disputed area. "Acquiring an easement by prescription requires 'clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years.'" Barnett v. Myerow, 95 Mass. App. Ct. 730 , 738 (2019), quoting Smaland Beach Ass'n v. Genova, 94 Mass. App. Ct. 106 , 114 (2018). Essentially, the elements for proof of an easement by prescription are the same as for a claim of adverse possession, minus the requirement of exclusivity. 





I. THE PLAINTIFF HAS FAILED TO CARRY HER BURDEN OF ESTABLISHING TITLE BY ADVERSE POSSESSION OR BY PRESCRIPTION TO THE DISPUTED AREA. 





 To address the plaintiff's adverse possession and prescriptive easement claims, the court must assume, for the purposes of this discussion only, that the disputed area between the concrete curb and the location of the picket fence when it was relocated, and before it was entirely removed, was in the record title ownership of the Irvings. This assumption is necessary for the purposes of this discussion because one cannot adversely possess one's own property, and if the disputed area was already in the record ownership of the plaintiff, she cannot prove her case of adverse possession for that reason alone (nor, of course, would she need to do so). Further, such an assumption is required in the present case because neither party has demonstrated record ownership of the disputed area, as discussed below. 





 With this assumption in place, the plaintiff has failed to sustain her burden of demonstrating by "clear proof," Tinker v. Bessel, supra, 213 Mass. at 76, that she has met her burden of proving all the elements of adverse possession or easement by prescription. The only testimony offered by the plaintiff with respect to the use of the disputed area was that of Lorraine Stevens and her son Mark Stevens, Lorraine Stevens testified without any elaboration that the "driveway" was used for parking by tenants at the property. [Note 20] Ms. Stevens, who admitted to "rarely" visiting the property, [Note 21] offered no testimony as to the number of cars that parked on the driveway, how often car(s) would park on the driveway, or, most significantly, where on the driveway cars would be parked. Ms. Stevens' son Mark, who lived at the property from 1981 to 1993, was hardly more forthcoming about the use of the driveway. Mr. Stevens testified that there were "three tenants, three apartments, three parking spaces." [Note 22] He offered no additional detail, once again leaving the court in the dark about the frequency, and more importantly, the exact locations and configurations in which the cars parked in the driveway. There was no suggestion that parking spaces were striped or marked in any way. This gap in the testimony is important because the physical configuration of the driveway suggests that at least two, or possibly three, or even four cars could park in the driveway without encroaching on the disputed area if they parked in tandem, and further still that parking in the disputed area might be physically difficult or impossible, depending on how other cars had parked. This is due in large part to the fact that the curb cut existing at all relevant times did not extend the entire width of the paved area on the driveway. It did not extend over the frontage so as to provide access directly to the disputed area, and even if it did, the two steps at the front of the disputed area made direct entry by a vehicle into the disputed area impossible. The width of the driveway without the disputed area is 19 feet, wide enough for only two vehicles to park side by side; with the disputed area it is about 23 feet wide at the front of the property, still not wide enough for three average-size cars to park side by side. [Note 23] Furthermore, the driveway is deep enough, about 45 feet from the street to the back of the building on 197 Washington Street, for cars to park in tandem, one behind another, fitting up to four cars on the driveway in this fashion. Even if a car could shoe-horn into the disputed area, it would be blocked in by other cars because of the curb cut configuration. 





 The testimony of the plaintiff and her son was sufficiently vague on the topic of the location of parking in the driveway that I am unable to conclude that cars actually regularly used the disputed area; and given the physical configuration discussed above, I find it likely, and I so find, that the plaintiff failed to prove, by clear proof, that the disputed area was actually occupied and used for parking in other than perhaps, at best, an intermittent and occasional way. 





 Similarly, the testimony regarding pedestrian access over the concrete and granite steps from the street onto the disputed area was inadequate to constitute the clear proof necessary to establish a claim of adverse possession or prescriptive easement, The only testimony regarding the two steps was a simple "yes" from Mark Stevens in response to the question of whether the steps were used. [Note 24] No testimony was offered with respect to the purposes for which they were used, by whom they were used, or how often they were used. And once again, the physical lay of the land suggests that the steps would likely not have been used regularly by occupants of 197 Washington Street. These two steps were on the side of the property farthest away from the building. Any occupant of the building would have to walk out the front door of the building at 197 Washington Street, past their cars, then up the stairs, and then back toward the building to get to the driver's side of their car. Anyone leaving their vehicle to go into the building would be unlikely to walk away from the building to the steps, then back toward the building, when they could simply walk directly down the driveway or toward the building. If they were using the side door to the building, there is no reason anyone would use those steps. I find that the plaintiff did not carry her burden of showing by clear proof that the disputed area was used for pedestrian access or egress. 





 That leaves only two aspects of proof offered by the plaintiff left to consider. The plaintiff offered uncontested testimony, through her son Mark Stevens, that the pavement covering the driveway and the disputed area was installed by the plaintiff's late husband in the late 1970s, and that the pavement extended over the entire width to the concrete curb. The plaintiff also argues that for many years, certainly more than the required twenty years, the fence which sat atop the concrete curb, served to exclude the Gilmans and Clisbys from the disputed area. 





 Under the circumstances of this case, without more, the mere act of paving the disputed area to the concrete curb, did not serve to put the owners of 195 Washington Street on notice that they were being excluded from what was presumably their record property. "The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put," Mancini v. Spagtacular, LLC, 95 Mass. App. Ct. 836 , 841 (2019), quoting LaChance v. First Nat'l Bank & Trust Co., supra, 301 Mass., at 490. The two properties at 195 and 197 Washington Street and the disputed area between them are in the densely developed historic section of Old Town in Marblehead, where dwellings, many dating to the 18th or even 17th centuries, are built close together and with little or no setback from the street. Very few of these properties, if any, have lawns of any size, and almost everything is paved. The paving of a driveway over a property line in the midst of a sea of pavement in this dense, urban environment would not necessarily call attention to itself as an attempt to take one's neighbor's land, and I find that in this circumstance, based on the evidence, and as supported by my view of the subject properties, [Note 25] the paving of the driveway over the property line into the disputed area, without more, was insufficient to qualify as an act of possession, nor was it sufficiently open and notorious to support a finding of adverse possession or prescriptive easement. Compare, Mancini v. Spagtacular, LLC, supra, 95 Mass. App. Ct. 836 (encroachment of paved basketball court over property line amidst surrounding lawn was sufficient to put defendant on notice). 





 Similarly, the picket fence on top of the curb did not constitute an open and notorious occupation or enclosure of the disputed area. It was undisputed at trial that the picket fence was placed on top of the concrete curb by the Gilmans, the predecessors of the Irvings. The party responsible for erecting the fence is not dispositive, but in this case, the fence was not shown to have served the usual purpose of enclosing the disputed area or excluding the record property owners from the disputed area. First, it is clear, and I so find, that the picket fence, maintained by the Gilmans and later the Clisbys, was little more than ornamental. It was, by Mark Stevens' account, only thirty or thirty-two inches in height. [Note 26] Furthermore, if the fence was enclosing anything it would be the Gilmans' and Clisbys' walkway and narrow front yard, rather than excluding them from the area immediately on the other side of the fence. [Note 27] 





 Additionally, the plaintiff offered no evidence that the fence functioned to exclude the Gilmans or the Clisbys from the disputed area. The testimony was undisputed that the Gilmans and the Clisbys maintained the fence, including painting it and repairing pickets. I find implausible, and do not credit, the suggestion by the plaintiff's witness Mark Stevens that the painting and repair of the fence could have or would have been accomplished by leaning over the fence and without accessing the fence from the disputed area. Therefore, I find that the Gilmans and the Clisbys were not excluded from the disputed area by the plaintiff, and accordingly, any possession of the disputed area by the plaintiff was, at a minimum, not exclusive. 





 Based on the undisputed facts that the Gilmans erected the fence, the Gilmans and the Clisbys maintained the fence, combined with the low height of the fence and its use to enclose the Gilman/Clisby property rather than to exclude them from what may have been the northwestern edge of their property, I find that the picket fence did not constitute an open and notorious occupation or enclosure of the disputed area. The pavement and the fence, in short, were not "such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of right[.]" Sea Pines Condo. III Ass 'n v. Steffens, supra, 61 Mass. App. Ct. at 848. 





 Accordingly, the plaintiff has failed to carry her burden on her adverse possession and prescriptive easement claims with respect to the disputed area. 





II. NEITHER PARTY HAS ESTABLISHED RECORD TITLE TO THE DISPUTED AREA. 





 The plaintiff asserted in her complaint only claims for adverse possession and in the alternative, establishment of an easement by prescription. The plaintiff did not assert a claim that she had good record title to the disputed area in the alternative or otherwise. Similarly, the defendants did not assert a counterclaim seeking to quiet their record title to the disputed area. Notwithstanding these apparent strategic decisions of the parties to put all their eggs in the one basket of adverse possession, had either party demonstrated that they held good record title to the disputed area, I would have allowed an amendment to the pleadings to conform to the evidence on this issue. However, neither party presented any competent evidence demonstrating good record title to the disputed area. 





 Both parties placed into evidence, by agreement, surveys prepared by their respective surveyors. The plaintiff's survey, admitted into evidence as Exhibit 1, offers no monumentation or deed references to support its depiction of the property line between 195 and 197 Washington Street other than to show the concrete curb, with no explanation, by reference to a deed in the chain of title or otherwise, as to why that is the proper basis for the boundary between the two properties. Rather, the plan includes a note that the disputed property line is the "property line as surveyed by North Shore Survey Corp.," which only serves as a conclusory identification of the property line without providing any information about how the correctness of the property line as shown was determined. The testimony of the plaintiff's registered land surveyor, who prepared the survey, did not provide further insight. The plaintiff's surveyor admitted that she did not run a complete title search of the subject properties despite acknowledging it was necessary to do so. [Note 28] Instead, she relied on unspecified "town survey notes (from) back in the 1930s." [Note 29] The specific notes upon which she relied were not disclosed or even described, nor were they offered into evidence. In any event, the notes likely would not have been admissible if had they been offered, as even town assessor's maps are not admissible to determine property boundaries. See Noyes v. Lawrence, 16 LCR 738 (2008, Sands, J.). 





 The defendants' survey fared no better. The defendants' survey, prepared by Control Point Associates, Inc., was also an agreed exhibit. [Note 30] The defendants' survey purported to rely on an 1812 deed, also not in evidence, [Note 31] as a basis for the property line between the two properties. The defendants' surveyor was not offered as a witness to attempt to justify the use of a more than 200-year old deed with no intervening chain of title established as the basis for the disputed property boundary. Tellingly, notwithstanding the notation on the survey of the supposed "deed line" purportedly established by the 1812 deed, the defendants' survey warns in Note 4 that, "This survey was prepared without the benefit of a title report..." Accordingly, the defendants' survey, like the plaintiff's survey, was of no use in determining the proper boundary line between the parties' properties. 





CONCLUSION 





 For the reasons stated above, the plaintiff's claims for adverse possession and for establishment of a prescriptive easement fail. However, as no party has demonstrated clear record title to the disputed area, the court will not issue a judgment declaring that any party has title to the disputed area free and clear of any claims by the other party. 





 Judgment accordingly. 





FOOTNOTES
[Note 1] Exhibit ("Exh.) 2, Deed dated September 10, 1951, recorded with the Essex South District Registry of Deeds ("Registry") in Book 4064, Page 232. 

[Note 2] Exh. 3, Deed dated June 8, 1990, recorded with Registry in Book 10573, Page 234. 

[Note 3] Exh. 4, Deed dated July 21, 2006, recorded with Registry on September 6, 2006 in Book 26054, Page 339. 

[Note 4] See Exhs. 3, 4. 

[Note 5] Deed dated November 1, 1991 and recorded with the Registry in Book 11047, Page 563. (The parties did not include this deed as an exhibit.) 

[Note 6] Exh. 7, Deed dated October 12, 2005, recorded with the Registry on October 12, 2005 in Book 24940, Page 308. 

[Note 7] Exh. 8, Deed dated August 25, 2015, recorded with the Registry on August 26, 2015 in Book 34327, Page 186. 

[Note 8] Id. 

[Note 9] Transcript ("Tr.") pp. 120-121. 

[Note 10] Exh. 9, The Control Point Plan was recorded with the Registry on May 11, 2016 in Plan Book 453, as Plan 61. 

[Note 11] Exh. 8. 

[Note 12] Exh. 9. 

[Note 13] Tr. p. 97; Exh. 12. 

[Note 14] Tr. pp. 78, 87-88, 95. 

[Note 15] Tr. pp. 89-90, 91. 

[Note 16] Tr. pp. 69, 90. 

[Note 17] Tr. pp. 103-104. 

[Note 18] Exhs, 1, 12. 

[Note 19] Exh. 13; Tr. p. 144, 

[Note 20] Tr. p. 69: Q. And what was that driveway used for, if anything? 



 A. Cars. Tenants in the house, tenants.



[Note 21] Tr. p. 75. 

[Note 22] Tr. p. 90. 

[Note 23] Exh. I. 

[Note 24] Tr. pp. 103-104: Q. And with respect to the granite - well, with respect to the stairs on the left of that picture (Exh. 12) ... were they used to access the property at 197 [Washington)? 



 A. Yes.



[Note 25] "To the extent the judge's factual findings were based in part on his view of the parties' respective parcels, there was no error." Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626 , 629 fn. 5 (2018). 

[Note 26] Tr. p. 97. 

[Note 27] Exh. 12. 

[Note 28] Tr. p. 25. "I don't recall specifically going back through these deeds, but it is something we do tend to do." 

[Note 29] Tr. p. 23. 

[Note 30] Exh. 9. 

[Note 31] Although offered at trial, the 1812 deed was excluded on the grounds that it had not been disclosed in the joint pre-trial memorandum a? required by the court, and it was offered without a sufficient foundation, as it was offered without offering any other title research linking it to the present property. Tr. pp. 4-11, 138-139. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.